# STATE v. BOWEN.

No. 2455. Decided June 27, 1913 (134 Pac. 623).

1. CRIMINAL LAW—EVIDENCE—OTHER OFFENSES. The rule that evidence of separate and similar offenses is inadmissible against accused on trial for a specific offense does not apply where it is material to show motive or a general plan for the commission of the specific offense, or where criminal intent or guilty knowledge of unlawful acts with respect to the specific offense is material, or where the specific offense and other claimed similar or separate offenses constitute part of one transaction or of a general scheme or plan and are so related that a complete account of the entire transaction of the one cannot be given without showing the other, or where the proof of the one involves proving the other, in which cases evidence of the separate and similar offenses is admissible. (Page 113.)

2. CRIMINAL LAW—EVIDENCE—OTHER OFFENSES. Where, on a trial for the larceny of a cow, the evidence showed that accused was a ranchman, and that the hide of the cow of prosecutor was found on accused's premises, evidence of the finding of other hides on accused's premises at the same time was inadmissible, in the absence of evidence that the animals from which the other hides had been taken had been stolen or that accused's receiving them was a part of the larceny charged. (Page 113.)

3. CRIMINAL LAW—EVIDENCE—DECLARATIONS—ADMISSIBILITY. Where, on a trial for the larceny of a cow, accused showed that a number of cattle on the ranch had been killed by a train and that he believed the animal in question belonged to a third person and that he wrote a letter to the third person notifying him of the facts, and prosecutor on direct examination testified that the cow in question belonged to him and identified the hide of that cow by a brand which he claimed was his brand, and on cross-examination admitted that it was recorded in the name of the third person, it was error to

permit him on redirect examination to testify to a conversa-
tion between himself and the third person, in the absence of
accused, in which the third person admitted prosecutor's owner-
ship of the brand. (Page 118.)

APPEAL from District Court, Fifth District; *Hon. Joshua
Greenwood,* Judge.

Henry Bowen was convicted of larceny and he appeals.

REVERSED AND REMANDED FOR NEW TRIAL.

*J. W. N. Whitecotton* for appellant.

*A. R. Barnes,* Attorney-General, and *E. V. Higgins* and
*George C. Buckle,* Assistant Attorneys-General, for the
State.

STRAUP, J.

The defendant was convicted of the larceny of a cow, the
property of E. F. Bingham. He appeals. He seeks a re-
versal on the grounds of insufficiency of evidence and of al-
leged errors in the admission of certain evidence.

It is alleged that the larceny was committed on the 18th
of January, 1912. Bingham's cow, with other cattle, was
on the range. The last he saw of her, as testified to by him,
was in July or August, 1911. She then was on the range
and bore his brand. Another witness testified he saw her
on the range in September. That, according to the evi-
dence of the state, was the last any one saw the cow. Bing-
ham testified he had raised her; that he had not sold or
otherwise disposed of her; that he had looked for her on
the range and was unable to find her. Two other witnesses
for the state, Smithson and a constable, testified that they
were at the defendant's corral or barn on the 17th or 18th
of January, 1912, and there saw five cattle hides and one
horse hide; two cattle hides lying on the floor, the rest
nailed to the wall. The hides had been taken from the car-
casses several months. Smithson claimed the two on the

-floor. The defendant disputed the claim and stated all of them were his and from animals owned by him. Smithson and the constable left and returned with a search warrant. According to their testimony the defendant objected to their taking any of the hides, but finally consented to their taking those claimed by Smithson. They, however took all of them and delivered them to the committing magistrate. One of them was identified by Bingham as the hide of his cow. Another was identified as the hide of a cow belonging to Joseph Dewsnup. These had brands on them; the one Bingham's brand, as testified to by him, the other Dewsnup's brand. The rest had no brands, or at least no visible brands, nor were they otherwise identified, except as hides taken from the defendant's possession on a search warrant.

All the hides, including the horse hide, were brought into court, identified as hides taken from the defendant, marked as exhibits and offered in evidence. The defendant conceded the hide identified as the hide from the Bingham cow was receivable, but objected to the introduction of the others as well as the testimony as to the defendant's possession and the taking of them from him and the 1, 2 conversations had with respect to them. These objections were overruled and all the hides admitted, except the horse hide. That hide, after it had been dragged around in the courtroom, marked as an exhibit and testified to as having been found in and taken from the defendant's possession on the search warrant, was excluded. Timely inquiries of the prosecuting attorney were made by counsel for the defendant whether he claimed that the hides other than that of the Bingham cow were hides of animals stolen at or about the time he claimed the Bingham cow was stolen, or whether the defendant's possession or his taking them was a part of the transaction, or was connected with or related to, the larceny charged. The reply was made, "I don't know; I want to know about it;" but at another time, when similar objections were made, the claim was made that the "testimony was *res gestae* and explanatory of the

43 Utah—8

defendant's possession." These rulings are complained of. They are here defended on the theory that the evidence was admissible to identify the defendant, to connect him with the larceny charged, and to show the intent with which the act was done." We think the evidence was improperly received. It has no legal relevancy as claimed for it either in the court below or here. It is conceded that, as a general rule, evidence of separate and similar offenses is not admissible against the accused on trial for another specific offense. There are some exceptions: Where it is material or proper to show motive, or a general scheme or plan, for the commission of the alleged specific offense; where criminal intent, or guilty knowledge of wrongful or unlawful acts or conduct with respect to matters involved in the charge, are material, frequently applied in cases of uttering forged instruments, counterfeit coin or money, receiving stolen goods, and others, where guilty knowledge or criminal intent as to particular acts or conduct are material subjects of inquiry; and where the alleged offense and other claimed similar or separate offenses constitute parts of one transaction, or of a general scheme or plan, and are so related and connected that a complete account of the entire transaction of the one cannot fairly be given without also showing the other, or where the proof of the one necessarily involves proving the other. Extended notes and citation of numerous cases, *People v. Molineux,* 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193. The rule is clearly stated by Professor Jones. Jones on Ev., section 143 *et seq.*

We think the evidence complained of does not fall within any of the exceptions. Nor do the authorities and cases cited by the state support its contention, except, perhaps, to some extent the cases of *Johnson v. State,* 148, Ind.. 522, 47 N. E. 926, and *State v. Phillips,* 160 Mo. 503, 60 S. W. 1050. In the latter the state gave evidence to show that the accused committed the charged offense, the larceny of a cow belonging to one Harris on the 11th of May, and then was permitted to show that nearly a month before that the accused, in the same neighborhood, also stole three other

cows, the property of one Hudspeth, and disposed of them to the same party to whom he had disposed the subject of the larceny. The court said this was proper "for the purpose of showing the intent with which the act was done." This, we think, is stating the rule too broadly and is not sufficiently restricted to the motive or intent which inspired or prompted the act or the guilty knowledge under which the accused acted. Of course larceny involves a criminal intent—a felonious taking to deprive the owner of his property —as do many other crimes. But, if A. is charged with the murder of B., it would not be competent, in the absence of proof of a general plan or scheme or that the offenses were parts of one entire transaction, to show the murder of C. by A. to prove a malicious intent to kill B. or to disprove a claimed accidental or justifiable killing. Nor, in the absence of such exceptions, would it be competent to show that A. feloniously took C.'s cow to prove that he feloniously took B.'s or to disprove a claimed innocent taking. To bring it within the rule it should be made to appear that the motive, the intent which inspired or prompted the felonious taking of the one, also inspired or prompted the taking of the other, and that the two were so related and connected as to be parts of one transaction. A part of subdivision "f," 8 Ency. Ev. p. 120, is cited. But, when the whole of the subdivision and that following it are read, the rule there stated makes against and not for the state. That is still more apparent when the cited cases in support of the text are read. The case of *State v. Labertew,* 55 Kan. 674, 41 Pac. 945, is also cited. Said the court:

"Mrs. Nichols' cattle (the subject of the larceny) were not taken separately but together with thirteen others, and it was entirely proper to show that the thirteen others were taken from the same corral at the same time, that they were found in the stockyards of St. Francis, and also to show to whom they belonged, not for the purpose of convicting the defendant of different larcenies, but as facts directly connected with the larceny of the cattle belonging to Mrs. Nichols."

The distinguishing features of that case and this are self-evident. To the same effect are the cited cases of

*Commonwealth v. Johnson,* 150 Mass. 54, 22 N. E. 82,
and *Brown v. State,* 9 Tex. App. 81.   So, too, do we think
is the cited cases of *State v. Schaffer,* 70 Iowa, 371, 30 N.
W. 639, distinguishable.   There the subject of the larceny,.
a set of harness, on a search warrant was found in a box
with two spools of wire buried in sawdust in the accused's
icehouse.   On his direct examination he himself testified
that he had pleaded guilty to a charged larceny of the wire,
but that he had purchased the harness and buried it in the
sawdust to prevent its stealing.   Then on cross-examination,
and on the assumption of the truth of his testimony, he was
asked why he placed the harness and the wire in the same
box and thus buried them together.   Said the court, the
acts proved with respect to the wire "were incidental merely
to the main fact which the state was seeking to establish, the
possession by the defendant of the stolen property described
in the indictment."   There the wire and the harness were
placed in the same box, which, as claimed by the state, had
been buried and concealed to prevent discovery.   The facts
and circumstances of the concealment with respect to the
harness could not well have been shown without also showing
the concealment of the wire, or at least a complete account of
the transaction of the one in such respect could not well have
been given without also disclosing the other.

The case here is different.   The defendant was a ranch-
man and cattle man.   The finding of hides in his barn or
corral was itself not an unusual or suspicious circumstance.
The finding in his possession of the hide of the Bingham
cow was of course admissible.   But that possession and all
the circumstances of it could have been shown, the hide ex-
hibited and put in evidence, without showing the possession
of, or putting in evidence, the other hides.   No evidence
was adduced and no claims made that such others, or the
animals from which they had been taken, had been stolen
or that the defendant wrongfully obtained possession of
them, nor that his taking or receiving them had anything to
do or was in any wise connected with, or was a part of, the
transaction of the charged larceny.   But one of the hides,

other than that of the Bingham animal, was identified as
the hide of an animal belonging to any one. That was
identified as the hide of a cow belonging to Dewsnup. But
no testimony was given that the animal was lost or stolen,
or that the defendant's possession of the hide was wrongful.
The other hides were not identified as hides of animals
belonging to anyone. Nor was there any evidence adduced
that they, or the animals from which they were taken, did
not belong to the defendant, or that his possession was wrong·
ful. Evidence was adduced that Smithson, at the defend-
ant's barn before the hides were seized by the constable,
claimed two of them. But the same evidence which shows
that also shows that the defendant then disputed the claim
and asserted that the hides belonged to him and were of cattle
owned by him. But no testimony whatever was given by
Smithson or any one that the hides belonged to him or were
from cattle owned by him or that the defendant's possession
was wrongful. The state of course claims such inference
from the conversation between Smithson and the defendant
at the barn. Clearly no such inference or admission by the
defendant of Smithson's ownership is permissible, since the
claim there made by Smithson was flatly disputed and not
acquiesced in by the defendant. That is about as far from
proving ownership by an admission as anything can be. So
far as disclosed, the testimony with respect to the defend-
ant's possession of the hides other than that of the Bingham
cow had no more legal relevancy than if the constable had
also seized a set of harness, a saddle, and a scoop shovel in
the defendant's barn, brought them into court, and identi-
fied them as property taken from the defendant on a search
warrant. We therefore think the evidence complained of
was improperly received because there is no evidence to
bring it within any of the enumerated exceptions or to show
a wrongful or unlawful taking or possession by the defend-
ant. That the rulings were prejudicial is self-evident.
And we think the testimony permitted, over the defendant's
objection, with respect to the horse hide and the exhibition
made of it before the jury as property taken from the de-

fendant on a search warrant, though not finally admitted, was about as harmful as the admission of the cattle hides.

Another ruling complained of is this: Bingham, on behalf of the state, testified on his direct examination that the cow in question belonged to him and identified the hide of that cow, among other things, by the brand which he testified was his brand. On cross-examination he he was asked if that brand was recorded in his name. He answered that it was not. Then he was asked if it was not recorded in the name of Dan James. He answered that he had not seen the record but understood that it was. Then on redirect examination the state, over the defendant's objection, was permitted to interrogate the witness with respect to a conversation between him and James, in the absence of the defendant, in which James made certain admissions of Bingham's ownership of the brand, "claimed no animals branded with it," and offered to give him a bill of sale of it, to which the witness replied that he did not want it, that he was the owner of the brand and had used it for many years though recorded in James' name. The state defends the ruling on the ground that the redirect examination related to matters brought out on cross-examination. Not so. The witness was not asked concerning any conversation between him and James. On direct examination he had testified that the brand was his brand. On cross-examination he admitted that it was not recorded in his but in James' name. Then, to rebut whatever inference or presumption of ownership of the brand might be deduced from such record, the state was allowed to show the hearsay declarations of both the witness, and James, that the witness, and not James, was in fact the owner of the brand, and "that James claimed no animals branded with it." Ownership of the cow, and in that connection the ownership of the brand borne by her, was material. The state had the undoubted right to prove it; but it had not the right to prove it by hearsay evidence. The admission of this evidence was especially prejudicial in view of the defendant's claim. He claimed, and adduced considerable

evidence in support of it, that a number of his cattle on the range had been killed by a railroad train. Among them was the cow in question. He believed it to be James' cow. He permitted his son to skin her, which he did. Then the defendant wrote a letter to James notifying him of these facts. James himself testified that he had cattle on the range; that he had the brand recorded in 1902 and ever since had used it to brand his cattle; and that he received a letter from the defendant notifying him that an animal with his brand had been killed by a railroad train and that the defendant's boy had skinned her and later saw the defendant about it.

Since the judgment, because of these errors, must be reversed and the case remanded for a new trial, we find it unnecessary to pass on the question of insufficiency of the evidence, for no matter how we may decide that question the case, nevertheless, must be remanded. Furthermore, the verdict and judgment were rendered not only on the competent evidence but on the incompetent and prejudicial evidence as well, but for which the verdict might have been different. To now eliminate the incompetent evidence and determine the question of the sufficiency of the evidence on the competent evidence requires us to pass not on the evidence upon which the verdict was in fact rendered, but on evidence to support another verdict and to assume that on a retrial the competent evidence will be the same as it was on this trial.

So the judgment for the reasons given is reversed and the case remanded for a new trial.

McCARTY, C. J., and FRICK, J., concur.