## STATE v. JUDD.

No. 4742.  Decided June 25, 1929.  (279 P. 953.)
Rehearing Denied July 31, 1929.

400

*Badger, Rich & Rich,* of Salt Lake City, for appellant.

*George P. Parker,* Atty. Gen., and *L. A. Miner,* Asst. Atty. Gen., for the State.

CHERRY, C. J.

The defendant was charged with having on the 23d day of July, 1923, feloniously appropriated to his own use $200 of public money belonging to Salt Lake county, which had come into his hands as deputy county treasurer. He was tried before a jury, found guilty, and sentenced to imprisonment in the state prison. From the judgment of conviction he has appealed to this court.

A reversal of the judgment is sought upon the grounds of alleged errors of the trial court in the admission and rejection of evidence, and in certain of the court's instructions to the jury. The accused was a deputy county treasurer of Salt Lake county from 1921 to 1927, in charge of the redemption department of the county treasurer's office. An audit disclosed a shortage of the funds in that particular department of $7,064.96 during the period from May 1, 1922, to August 27, 1926. It was the theory of the state that money belonging to the county had been unlawfully

appropriated, and the fact concealed by false entries in the books of account and the records of that department.

Evidence was introduced showing the system of keeping records and accounts in the department, and numerous instances of alterations or false entries, obviously made to cover up shortages. The business of the redemption department, of which the accused had charge, was to receive payments in redemption of property previously sold for taxes. Upon such a payment being made, the system in use required the transaction to be recorded as follows: An appropriate receipt or certificate was executed in duplicate, one of which was issued to the redemptioner and the other transmitted to the state auditor. Stubs of the certificate were also made in duplicate, one of which was transmitted to the county recorder, to be entered on his record, and the other retained in the redemption department of the office of the county treasurer. These certificates and stubs all purported to contain the amount of tax, penalty, interest, and costs collected, with other appropriate facts, and, except for the certificate issued to the redemptioner, furnished the basis for the entry of the redemption in the several records of the respective offices. The stub retained in the redemption department was the original and base entry for the charge against the county treasurer and the redemption funds in his possession; that is to say, the aggregate of the amounts shown on the stubs of the redemption certificates was the amount with which the department was charged and for which it was accountable. From this stub an entry was made in the delinquent tax sale record, showing the redemption of the particular property redeemed, and from the stub was obtained the amount to be charged against the treasurer in the registry of receipts, the cash account, and in the record of apportionments, where sums received for redemptions were apportioned and distributed among the respective governmental units entitled thereto.

The system of records and accounts was such that misappropriation of money could be temporarily concealed by a

manipulation of accounts, whereby in a given transaction the correct amount of money received would be acknowledged to the redemptioner, entered on the delinquent sale record, and reported to the county recorder and the state auditor, and a less amount entered upon the other books and records mentioned; the latter being the fiscal debit charges against the department. For obvious reasons the correct amount paid must be stated in the certificate issued to the redemptioner, and because the delinquent tax sale record and a similar record in the office of the county recorder both showed the amount of delinquent taxes opposite each tract of land sold, the correct amount to discharge such delinquency on redemption had to be reported and entered, else the discrepancy would be apparent. By entering reduced amounts in the records and books of account referred to in the redemption department, an abstraction of money to the extent of such reduction could be covered and the accounts of the office be made to appear correct.

The alteration and false entries relied upon to prove the offense charged in the information arose out of a transaction whereby on July 23, 1923, one J. M. C. redeemed certain property from a delinquent tax sale by a payment of $391.94. This was the correct and necessary amount required to be paid, as shown by the records of the department, and the certificate of redemption in the handwriting of the accused recited the receipt of such sum. The treasurer's stub, however, had been altered by changing the figure "3" in the hundred column to "1," thus making it appear that $191.94 only had been received. The entry in the apportionment record was for the reduced sum, and apparent changes had been made in the daily cash account to make it correspond with the alteration. There was sufficient evidence to warrant the jury in finding that the accused made the alterations and entries referred to.

In addition to the alteration and falsification of the records concerning the transaction relied on to establish the particular offense charged, the state was permitted to prove,

over the objection of the accused, numerous other similar alterations and false entries relating to over 40 transactions occurring at various times, both before and after the offense charged, and between May 1, 1922, and August 27, 1926. Complaint is made that the admission of this evidence was erroneous (1) because it related to other independent and disconnected offenses; and (2) because, with respect to the evidence of most of the transactions, the evidence of the connection of the accused with the supposed offenses was not of sufficient degree to render the proof of such other offenses admissible.

The evidence complained of was not irrelevant and inadmissible because it connected the accused with other criminal offenses. It is a rule of general application that, in embezzlement cases, proof of other acts similar to the one charged is admissible to show criminal intent, 1 Wigmore on Evidence § 329; Underhill on Crim. Ev. (3d Ed.) § 447; 2 Jones, Comms. on Ev. (2d Ed.) §§ 624-626; *State* v. *Siddoway*, 61 Utah 189, 211 P. 968; note to *State* v. *Downer*, 43 L. R. A. (N. S.) 774.

Nor can the objection to the evidence be sustained upon the grounds that it was not sufficient in degree to connect the accused with the other similar alterations and falsifications. The general rule is that evidence is not relevant or admissible unless it reasonably tends to establish the fact sought to be proved. But "the evidentiary fact offered does not need to have strong, full, superlative probative value, does not need to involve demonstration, or to produce persuasion by its sole and intrinsic force, but merely to be worth consideration by the jury." 1 Wigmore on Evidence, § 29; 2 Jones, Comms. on Ev. (2d Ed.) § 726.

But here we have a situation where evidence of collateral acts is admissible as an exception to the general rule for the restricted purpose of forming a basis for arguments and inferences that the act in controversy was done with evil intent. And the question arises: By what degree of certainty must such collateral act be established to

make it a safe basis for the purpose for which it may be employed? If the proof of the collateral act be sufficient to amount only to surmise or conjecture, or merely tends to show it as a fact, is it a sufficient basis for inference and argument concerning another act, as would be the case if the collateral act was satisfactorily established as a fact?

Upon the question of what degree of proof or probative value of evidence of other similar offenses is necessary to the admissibility of such evidence, when it is otherwise relevant, the authorities are not harmonious. It is held in some few cases that it must be clear and sufficient to support a verdict of the guilt of the accused of such other offenses. *Haley* v. *State,* 84 Tex. Cr. R. 629, 209 S. W. 675, 3 A. L. R. 779, and annotation following. Other cases and authorities prescribe a lesser test. Thus is *Commonwealth* v. *Robinson,* 146 Mass. 571, 16 N. E. 452, 456, the court said:

"There is no rule of law that, in order to render the testimony admissible, such prior fact must be established by a weight of evidence which will amount to a demonstration, and shut out all doubt or question of its existence. It is only necessary that there should be so much evidence as to make it proper to submit the whole evidence to the jury."

The circumstances of the present case, however, do not require a decision by this court of the particular degree of proof requisite to the relevancy of such evidence. Testing the evidence in question by the rule that it must be sufficient to make out a prima facie case of guilt, and therefore sufficient to support a verdict of guilty if the acts had been charged, we find the evidence so admitted sufficient in probative value and weight as to be relevant and admissible. Such collateral acts are subject to proof by circumstantial evidence, and when so established become facts which may be taken as the bases for new inferences of fact. 1 Jones, Comms. on Ev. (2d Ed.) § 364.

There were numerous circumstances, all tending to show the accused guilty of making the numerous alterations and

falsifications in his department. The only difference in the proof of the numerous instances, of who made the false entries, was that two experts on handwriting, after a somewhat elaborate examination and analysis involving photographic enlargements, etc., gave opinion evidence that the alterations and false entries relating to the offense charged, and four or five of the other false entries, were in the handwriting of the accused. With respect to about forty of the other falsifications of the records, these two particular experts did not testify. But there was the testimony of another witness, who had been employed in the redemption department during the time in question, who, while not pretending to be an expert on handwriting, testified, from his knowledge of the handwriting of the accused, that numerous of the false entries were, in his opinion, made by the accused. It was also proved that the accused was in charge of the redemption department during the times in question; that he personally kept the register of receipts, the record of apportionments, and the daily case account, the particular records in which the false entries were made. All other employees of the department were called as witnesses and severally denied making any of the false entries.

The system and manner of keeping the records and accounts were shown, from which the jury could very reasonably infer that the accused must have made the false entries. That they were made by some one was admitted and proved. And all of them were in amounts less than the true amounts. That any other than the accused could have made the false entries is negatived by the system and practice by which the records and accounts were kept. This may be illustrated briefly. When a payment was received in the department, the original entry of the transaction was on the redemption certificate and stub, both in duplicate. On the same day the amount received must be entered on the daily cash account. The posting of the payment on the delinquent sales record, which was usually made by an assistant in the department, and was required to be and always was correct

in amount, was not made at any regular time, but irregularly, varying from one to seven days after receipt of the payment. The entries in the register of receipts and in the apportionment record, both made by accused, were also made at irregular intervals from one to thirty days from the time of the original entry. For another to make and conceal a false entry on the treasurer's stub involved the selection of that particular time after the assistant had posted the redemption in the delinquent sales record and before the accused had entered the amount of the redemption in the register of receipts and the apportionment record, and necessarily required him to alter the daily cash account in four separate places for every day from the day when the particular redemption had been made until and including the day preceding the day when the falsification was made.

The daily cash account was kept by accused in his own hand. To make up such account he must, of necessity, each day refer to the account of the preceding day for the balance to be carried forward. In such case the accused must have made entries in the register of receipts and apportionment book from a treasurer's stub, which plainly showed on its face that the amount of the payment evidenced thereby had been altered. It also involved the necessity of the accused, when making up his daily cash account, to each time refer back to and examine the preceding day's cash account for the purpose mentioned, when such preceding account, originally made in his own handwriting, had been altered in both the debit and credit columns and in the totals on both sides. For this to occur more than 40 times without the knowledge of the accused to such falsification is beyond the range of human probabilities. Other circumstances tended to support the conclusion that the falsifications were made by accused and to exclude the probability that any other person could have made them. So that we are bound to conclude from the record that there was sufficient evidence in law to support the finding that all of the alterations and false entries were made by the accused.

It is next contended that the trial court committed error in refusing to admit in evidence an offer of the accused to prove "that in the tax department under the jurisdiction of Mr. William Goesbeck there were approximately 450 false entries during the period of time commencing April 26, 1923, and ending January 19, 1926, in various amounts." It was further offered to show that such defalcations were made by other persons, and not by the accused.

We perceive no error in rejecting the offered evidence. It did not pertain to the redemption department, which was a separate division of the treasurer's office, where the falsifications charged against the accused were made. It amounted only to an offer to prove that some other person, in another and separate department in the same office, had committed offenses of a similar nature to those charged against the accused. Except as stated, there was no claim of any connection or relation between the offenses offered to be proved and the offenses which occurred in the redemption department. It is clearly not competent for the purpose of proving that one person did not commit a particular offense, to show that some other person did commit a similar, but different, offense. The proffered testimony amounted to no more than this, and no error was committed in refusing to admit it.

There are other assignments of error relating to the admission of evidence on cross-examination of the accused, which appellant's counsel has grouped and presented together. It was shown that the accused had kept certain moneys paid on a redemption in an envelope separate from the general funds, pending a claim for its return to the payer, to whom it was later paid. And questions were asked and answered as to the accused being "hard pressed" for money, as to betting on horse races, and that on one occasion he took $500 of the redemption funds and deposited his personal check therefor, and that the check was first dishonored and later paid. We cannot say

that the admission of any of this evidence was erroneous. The practices of keeping the records and the handling of the money of the department was a proper subject for inquiry, and the question concerning the financial stress of accused and his betting on horse races were relevant as bearing upon a motive for the commission of the acts by defendant which the prosecution was attempting to prove.

Error is predicated upon the refusal of the trial court to give the following instruction to the jury,  ■ concerning good character, which the defendant requested, viz:

"You are instructed that good character is an important fact with every man, and never more so than when he is put on trial charged with an offense which is rendered improbable in the last degree by a uniform course of life wholly inconsistent with any such crime. There are cases (and it is for you to say what weight it shall have in this case) where it becomes a man's sole dependence, and yet may prove sufficient to outweigh evidence of the most positive character. The most clear and convincing cases are sometimes rebutted by it, and a life of unblemished integrity becomes a complete shield of protection against what otherwise may appear to be proof of guilt. Good character may not only raise a doubt of guilt which would not otherwise exist, but it may bring conviction of innocence. In every criminal trial it is a fact which the defendant is at liberty to put in evidence, and being in, the jury has a right to give it such weight as they think it entitled to."

The requested instruction is objectionable, because it is in the main mere argument. No authorities are cited in support of it. No error was committed in refusing to give it.

Upon the subject the court gave the following instruction:  ■

"You are instructed that, when the proof in a criminal case tends to overthrow the presumption of innocence with which the law clothes a defendant, the latter is permitted to support the original presumption of innocence by proof of good character. Such facts tending to show good character, if proven, should be considered by the jury in connection with all the other testimony in the case, and not independently thereof. And the guilt or innocence of the defendant

determined from all the testimony in the case, and if upon a consideration of all the evidence, including that of his previous good character, you entertain a reasonable doubt as to his guilt, or if the evidence of good character, when considered in connection with all the other evidence, creates a reasonable doubt in your minds of the guilt of the accused, he is entitled to the benefit of such doubt, and you should acquit him."

No exception was taken to the giving of this instruction. The substance of the argument in this connection is that the defendant was entitled to an instruction to the effect that the circumstances may be such that proof of good character alone would be sufficient to create a reasonable doubt of guilt where, without it, no such doubt would exist. We express no opinion as to the necessity of giving such an instruction if properly requested. It is enough to say that in this case it was not requested, and the instruction given, at least, contained no affirmative error. Upon the record appellant has no valid complaint regarding the instructions upon the subject of good character.

Further complaint is made because the trial court refused the defendant's request to instruct the jury that:

"Great caution should be exercised in determining who was guilty of misappropriation in any case where it appeared that several persons had access to the funds and records, and particularly where, as in this case, the evidence was wholly circumstantial."

We are cited to no authority or legal principle which requires such an instruction, and we fail to see the propriety or necessity of it. The jury was instructed that the defendant was presumed to be innocent until he is proved guilty beyond a reasonable doubt, and that the burden rests upon the state to prove each and every essential fact constituting the offense charged beyond a reasonable doubt, and that in case of a reasonable doubt as to his guilt he is entitled to an acquittal. The instructions given prescribed the degree and certainty of proof required, without further caution or argument.

Another complaint is made "that the court erred in charging the jury upon the law of circumstantial evidence." Upon this subject the defendant requested an instruction which was refused and another given. The instruction requested was plainly objectionable. It is not set out in appellant's brief, and is not now defended or insisted upon. The argument goes to the criticism of the instruction which the court gave, and to which the defendant took a general exception. The instruction given was as follows:

"Circumstantial evidence in criminal cases is competent and, so far as its nature is concerned, is of the same force and effect as any other evidence: provided the facts and circumstances when taken all together are of such a character as to satisfy the minds of the jury beyond a reasonable doubt that the defendant is guilty. This kind of evidence is the proof of such facts and circumstances connected with or surrounding the perpetration of the crime charged as to tend to show the guilt or innocence of the person accused; and if these facts and circumstances, when considered all together, are sufficient to satisfy the minds of the jury of the guilt of the defendant beyond a reasonable doubt, then such evidence is sufficient to authorize a conviction. But if such facts and circumstances, when considered together, are explainable upon any other reasonable hypothesis than that the defendant is guilty, then such evidence will not warrant a verdict of guilty."

It is contended that the instruction is erroneous because it does not contain a direction (1) that the jury must find the facts and circumstances to be true; (2) that such facts and circumstances, in order to convict, must be incompatible on any reasonable hypothesis with the innocence of the defendant; (3) that such facts and circumstances are incapable of explanation upon any reasonable hypothesis other than defendant's guilt; and (4) that every circumstance constituting a link in the chain of evidence must be consistent with defendant's guilt and inconsistent with his innocence.

The instruction given substantially embraces the matters suggested by the first three objections. To say that facts and circumstances must be sufficient to satisfy the minds

of the jury of the defendant's guilt beyond a reasonable doubt necessarily implies that the jury must find the facts and circumstances to be true, and a direction that "if such facts and circumstances, when considered together, are explainable upon any other reasonable hypothesis than that the defendant is guilty, then such evidence will not warrant a verdict of guilty," is the full equivalent of a charge that, in order to convict, the facts and circumstances must be incompatible on any reasonable hypothesis with the innocence of the defendant. If the evidence is reasonably compatible with the innocence of the defendant it is clearly explainable on a hypothesis other than that of the defendant's guilt.

The fourth objection is also without merit. It is not mandatory to charge that "every circumstance constituting a link in the chain of evidence must be consistent with defendant's guilt and inconsistent with his innocence." Such is not a correct standard. Each circumstance is not to be considered independently, but in connection with other related facts and the conclusion reached upon the whole. The court here in another instruction stated that the burden was on the state to prove each and every essential fact constituting the offense charged to the satisfaction of the jury beyond a reasonable doubt, and in the instruction quoted charged that circumstantial evidence is the proof of facts and circumstances surrounding the act charged which tend to show the guilt or innocence of the person accused, and that if such facts and circumstances, when considered all together, are sufficient to satisfy the minds of the jury of the guilt of the defendant beyond a reasonable doubt, the evidence would authorize a conviction, but that, if such facts and circumstances, when considered together, were explainable upon any other reasonable hypothesis than that the defendant was guilty, the evidence would not warrant a conviction. Fuller instructions upon the subject are frequently given, but the essence of the law was contained in the instruction given in this case. At least the charge given on the subject contained no erroneous

statement of law. In the absence of the request for a correct and fuller instruction, error cannot be predicated upon a general exception to an instruction which is objectionable, at most, for not being more specific.

The judgment is affirmed.

EPHRAIM HANSON and FOLLAND, JJ., concur.

ELIAS HANSEN, J., concurs in the result.

STRAUP, J. I dissent. By the information it is charged that the defendant, a deputy treasurer of Salt Lake county, on July 23, 1923, unlawfully and feloniously appropriated $200, property of Salt Lake county, to his own use, contrary to chapter 39, § 8235, Comp. Laws Utah 1917, relating to "Crimes against Public Property." In support of the charge the evidence of the state was directed to a transaction in which one Chamberlain, at about the time stated in the information, paid to the defendant $392 to redeem certain property from a tax sale, and the giving of a receipt by the defendant showing the receipt of such amount of money, and to certain alterations made on the records and files in the redemption department of the office of the county treasurer relating to such transaction, whereby $200 of such amount so paid was not accounted for. There was evidence to show that such alterations consisted principally of altering figures on the records and files, reducing the amount so paid to $192, thus making the records and files to appear that only $192, instead of $392, were received respecting such transaction. Such was the basis of the charge, and to which the evidence of the state was directed to show that the defendant had taken $200 of moneys belonging to the county and appropriated and converted them to his own use. I think the evidence sufficient to support the charge.

The defendant was a witness in his own behalf. By his testimony he in effect admitted giving the receipt for $392, but denied that he made any of the alterations on the records or files or otherwise, and denied that he took or ap-

propriated any part of the moneys evidenced by the receipt, or that he otherwise took or appropriated any of the moneys of the charged offense. No claim was made by him at any time that the alterations were made through mistake, or to correct the records, or that they were made for any legitimate purpose, or that they were otherwise innocently made. He unqualifiedly denied making any of such alterations, and denied taking the money or any part thereof; and no evidence whatever was adduced or any circumstance shown to show that any of such alterations were made through mistake, or otherwise were innocently made. To the contrary, the evidence without dispute shows that all of such entries were false entries.

The state, however, in its case in chief, was permitted to show, not only the alterations made on the records and files relating to the transaction with respect to the payment of the $392, but also, over the objections of the defendant, was permitted to show more than 40 other transactions and alterations of a similar character made on the records and files in the redemption department, of which the defendant was the head, and in charge thereof, between May 1, 1922, and August 27, 1926, covering a period of over four years, some more than a year prior, and some more than three years subsequent, to the alleged charge in the information, and during which time a shortage of funds was shown in the redemption department of over $7,000. There was direct evidence to show that the alterations with respect to the charged offense, and the taking and the appropriation of the alleged $200, were in the handwriting of the defendant and were made by him. But no such direct evidence was given as to the numerous other alterations and transactions, the evidence which with respect thereto was received over the objection of the defendant. In other words, there is no direct evidence that any of such alterations were made by the defendant. And as to about all of such alterations the state does not contend that there was any such direct evidence. The indirect evidence claimed by the state, tending

to show that such other alterations were also made by the defendant, consists of proof that the defendant was at the head and had charge of the redemption department, the manner in which the business in such department was conducted, and the testimony of employees engaged in such department that they had not made any such alterations. It, however, was shown that the chief deputy and others with the defendant had access to the records and files in which it was claimed such alterations occurred. The defendant by his testimony also denied making any of such alterations.

It is claimed by the state, and the prevailing opinion proceeds on the theory that, though such 40 or more transactions to which such other alterations related and with which they were connected were separate and distinct transactions and offenses, yet the evidence with respect to them was properly admitted to show criminal intent. The claim of the defendant was, and as stated in the prevailing opinion, that the evidence with respect to such transaction was inadmissible, because it related to other independent and disconnected offenses, and because the proof as to the making of them and of misappropriation of funds with respect thereto by the defendant rested on mere inferences, and not on any direct evidence, and before evidence may be adduced and considered with respect to such other offenses and transactions the commission of such acts and offenses must be clearly established as a fact by direct evidence, and not left to mere inferences. In support of such contention the appellant, among other cases, cited *Baxter* v. *State*, 91 Ohio St. 167, 110 N. E. 456, *Gart* v. *U. S.* (C. C. A.) 294 F. 66, *State* v. *Stetson* (Mo. Sup.) 222 S. W. 425, and *Lankford* v. *State*, 93 Tex. Cr. R. 442, 248 S. W. 389.

In other words, it is the contention of the defendant that, if proof as to the commission of other offenses rests on a mere inference or inferences, such proof cannot legally be considered as a basis for making another inference, as to whether the defendant did or did not make the alterations

relating to or connected with or committed the charged offense, because, as contended by him, to permit that is to base one inference upon another, which, as he contends, is not permissible.

That is met by the holding in the prevailing opinion that the commission of such other offenses may be proved by mere indirect or circumstantial evidence, and, when so proved or established, such commissions become facts which then may be taken as a basis for other or new inferences of fact. The holding is to the effect that, when circumstances are proven from which the commission of another offense or offenses or criminal acts is inferable and justifiable, such commission becomes an established fact, which then furnishes the basis for other and new inferences. I cannot subscribe to such a holding. I think it illogical and a mere misnomer of terms, by calling a deducible inference or inferences, however reasonable or justifiable, a proven fact. Inferences are matters of argument, reasonings and deductions from proven facts. They are not themselves evidence. They are mere results or deductions which flow and are deduced from proven facts. It is a familiar rule of evidence, and one of general recognition, that inferences may be deduced only from proven facts, and that one inference may not be based upon another inference, or a presumption of fact upon another presumption of fact. That frequently has been held by this court. *State* v. *Potello,* 40 Utah 56, 119 P. 1023; *Utah Foundry & Machine Co.* v. *Utah Gas & Coke Co.,* 42 Utah 533, 131 P. 1173; *Busse* v. *Murray Meat & Live Stock Co.,* 45 Utah 596, 147 P. 626; *Johnson* v. *Silver King Consol. Mining Co.,* 54 Utah 34, 179 P. 61; *Denver & R. G. R. Co.* v. *Ashton Whyte-Skillcorn Co.,* 49 Utah 82, 162 P. 83, L. R. A. 1917C, 768.

1 Jones, Commentaries on Evidence (2d Ed.) § 364, is cited in the prevailing opinion as supporting the rule therein announced. Language is found in the citation supporting such a rule or doctrine. But it is not the language nor the doctrine of Professor Jones. Jones on Evidence (2d Ed.)

§ 111. It is the language or doctrine of Mr. Henderson, who prepared the second and revised edition of Jones' Commentaries on Evidence. But what he says in such respect is in conflict with what was said by Professor Jones, and is in repudiation of what is contained in the first edition of Jones' Commentaries on Evidence, prepared by Mr. Horwitz. 1 Jones, Commentaries on Evidence (1st Ed.) § 104. Professor Jones in his work classified presumptions into presumptions of fact and presumptions of law. Inferences of fact are treated by him under the classification of presumptions of fact. In speaking of general rules as to presumptions of fact, he at section 104 of his work says: "Perhaps the most important is that presumptions must be based upon facts and not upon inferences or upon other presumptions. 'No presumption can with safety be drawn from a presumption' "—citing *U. S.* v. *Ross,* 92 U. S. 281, 23 L. Ed. 707 and other authorities. In the first edition of Jones' Commentaries on Evidence, prepared by Mr. Horwitz, he, in volume 1, § 104, in speaking of general rules as to presumptions says:

"The most important is that presumptions must be based upon facts and not upon inferences or upon other presumptions. The mode of arriving at a conclusion of fact by drawing inferences or by resting one presumption upon the basis of another presumption is generally, if not universally, inadmissible. Mr. Justice Strong (in *U. S.* v. *Ross,* 92 U. S. 281, 23 L. Ed. 707) said: 'It is obvious that this presumption could have been made only by piling inference upon inference, and presumption upon presumption. * * * No inference of fact or law is reliable drawn from premises which are uncertain. Whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved, and not themselves presumed, * * * "In the first place, as the very foundation of indirect evidence is the establishment of one or more facts from which the inference is sought to be made, the law requires that the latter should be established by *direct evidence,* as if they were the very facts in issue." ' " (Italics added.)

The author further says:

"A presumption which the jury is to make is not a circumstance in proof: and it is not, therefore, a legitimate foundation for a pre-

sumption. There must be an open and visible connection between the fact out of which the first presumption arises and the fact sought to be established by the dependent presumption. In other words, although from proof of the fact A, the fact B may be presumed, and from proof of the fact B the fact C may be presumed, it does not at all follow that from proof of the fact A producing the presumption of B, the fact C may be presumed, because fact C is dependent upon the proof of fact B, and presumption is clearly not proof. Nowhere is the presumption held to be a substitute for proof of an independent and material fact."

That, as I think, is the accepted doctrine of the text-writers generally (1 Elliott on Evidence, § 89; 2 Chamberlayne on the Modern Law of Evidence, § 1029; 3 Ency. Ev. p. 70), and is as I regard the undoubted weight of authority. The decisions of this court heretofore cited are in harmony with it. The rule laid down in the prevailing opinion is, as I think, in conflict with it. On the theory that the evidence objected to related to separate and distinct offenses, as the state concedes and upon which the prevailing opinion proceeds, I think the evidence was improperly received. In the case of *State* v. *Bowen*, 43 Utah 111, 134 P. 623, 624, the rule is stated that:

"As a general rule, evidence of separate and similar offenses is not admissible against the accused on trial for another specific offense. There are some exceptions: Where it is material or proper to show motive, or general scheme or plan, for the commission of the alleged specific offense; where criminal intent or guilty knowledge of wrongful or unlawful acts or conduct with respect to matters involved in the charge, are material, frequently applied in cases of uttering forged instruments, counterfeit coin or money, receiving stolen goods, and others, where guilty knowledge or criminal intent as to particular acts or conduct are material subjects of inquiry; and where the alleged offense and other claimed similar or separate offenses constitute parts of one transaction, or of a general scheme or plan, and are so related and connected that a complete account of the entire transaction of the one cannot fairly be given without also showing the other, or where the proof of the one necessarily involves proving the other."

Cases are there cited supporting such rule. The general rule that evidence of separate and similar offenses is not

admissible against the accused on trial for another specific offense, and is not admissible as showing a probability that he committed the charged offense, is not disputed. It is claimed that the evidence was properly admissible as an exception to the general rule to show criminal intent. It, of course, is manifest that the evidence was not admissible to show with what intent the defendant took and appropriated and converted to his own use the moneys of the county, received by or intrusted to him. Such a criminal intent is manifest upon proof that he took the money and converted it to his own use. It certainly would not be admissible to show that the accused in a separate and distinct transaction stole money, or took and appropriated it to his own use, to show with what intent he stole the money charged in the information, or took and converted it to his own use. As well say it is competent to show that the accused committed a separate and distinct burglary to show with what intent he committed the charged burglary, or that he committed a separate and distinct robbery for the purpose of showing with what intent he committed the charged robbery. Evidence of other and distinct similar offenses may not be received for such purpose. *State* v. *Spray*, 174 Mo. 569, 74 S. W. 846. To hold it is, is a misconception of the exception to the general rule. The rule in such particular is that "where, from the nature of the offense under inquiry, proof of its commission as charged carries with it the evident implication of a criminal intent, evidence of the perpetration, or attempted perpetration of other like offenses will not be admitted." 8 R. C. L. 206; 16 C. J. 589, and notes to case of *Sykes* v. *State*, 105 Am. St. Rep. 995.

The correct rule as to the exception and as stated in 8 R. C. L. 201 is that:

"Whenever mental state, scienter, or quo animo constitutes an ingredient of the offense charged, evidence is admissible of acts, conduct or declarations of the accused which tend to establish such knowledge intention, or motive notwithstanding the fact that it may disclose a different crime in law. Where a felonious intent is an

essential ingredient of the crime ·charged, and the act is claimed to have been innocently or accidentally done, or by mistake, when the result is claimed to have followed an act lawfully done for a legitimate purpose, or where there is room for such an inference, it is proper to characterize the act by proof of other like acts producing the same result, as tending to show guilty knowledge, and the intent or purpose with which the particular act was done, and to rebut the presumption that might otherwise obtain."

The rule is also to the same effect well stated and illustrated in 16 C. J. 586-589, and in notes to the case of *Sykes* v. *State,* supra, notes to case of *People* v. *Molineux,* 62 L. R. A. 193, and Jones on Evidence (2d Ed.) § 143; and such is the rule announced in *State* v. *Bowen,* supra. Had it at the trial in any manner been claimed or contended that the alterations, made on the records and files relating to and connected with the offense charged in the information, were made through mistake, or were accidentally made, or for some legitimate purpose, or for any reason were innocently done, by the accused, then under the authorities it would have been competent for the state to show that other similar alterations were made by him, although they related to or were connected with or disclosed another offense or offenses. But we here have no such a situation. In no particular did the accused claim or contend that the alterations were made through mistake, or for correction, or for any legitimate purpose, or that they otherwise were innocently made. What he claimed and contended at all times was that the alterations were not made by him. Proof that alterations not related to or connected with the charged offense was not competent to show that the alterations relating to and connected with the charged offense were made by the accused. The authorities do not permit that, and I do not undertsand it is claimed the evidence was admissible for such purpose.

Such other acts of criminality having no connection with the acts under investigation—being treated as relating to other separate offenses or transactions—were· thus not le-

gally relevant, and hence the evidence with respect to them should not have been permitted to prejudice the accused or to create a probability of guilt of the charged offense. Jones on Evidence (2d Ed.) § 143. And the authorities generally are to the effect that when the accused is put on trial for one offense he is to be convicted, if at all, by evidence which shows him guilty of that offense alone, and that proof of guilt of one or more of other similar offenses unconnected with that for which he is put on trial must be excluded, unless it comes within one or the other of the exceptions stated in *State* v. *Bowen,* supra, and as stated by the authorities there and hereinbefore referred to.

Thus, until some claim was made or evidence adduced to show that the alterations relating to the charged offense were made by the accused through mistake, or were made for some legitimate purpose, or were innocently made, the state was not required, and had not just cause, to anticipate that such a claim or defense might be made, and put in evidence in its case in chief to forestall it, and attempt to throw it down before something was urged or adduced to show such a claim or inference. Evidence of such other acts of a similar character, of course, may be used by the prosecution to rebut a defense of accident, mistake, or legitimate purpose, when in some manner claimed or urged by the defendant, or some circumstance or evidence shown with respect thereto (*People* v. *Lonsdale,* 122 Mich. 388, 81 N. W. 277; *State* v. *Spray,* supra; notes to the case of *Sykes* v. *State,* supra), except where scienter, or quo animo, constitutes an ingredient of the offense charged, such as, among others, receiving stolen goods or uttering or passing counterfeit money, or to show motive or a common scheme or plan.

It, however, is not claimed by the state that the alterations made with respect to and connected with the charged offense and the numerous other alterations made prior to and long subsequent thereto were but parts of a general scheme or plan, or that all such alterations related to or

were connected with but one transaction, or that the unlawful and felonious taking and appropriation of the $200 charged in the information were but a part of a general and continuous peculation covering a period from May, 1922, to August, 1926, and hence all parts of one transaction, resulting in a taking and a conversion of more than $7,000. Nor does the prevailing opinion proceed on any such theory. The state contends, and the prevailing opinion proceeds on the theory, that the unlawful taking and appropriation of the charged $200 constituted a complete and separate offense; and on the record it is clear that the state at the trial proceeded on the theory that whatever moneys were taken and appropriated by the accused at other times, between May 1, 1922, and August 1926, especially those taken subsequent to the charged offense, constituted separate offenses from that charged in the information, and that an acquittal or conviction of the charged offense would not bar a prosecution for moneys unlawfully taken and appropriated by the accused at other times, especially not as to moneys taken and appropriated by him subsequent to the charged offense stated in the information as having been committed on July 23, 1923, when it is alleged $200 were taken and appropriated by the accused.

. But in my judgment there is still a greater obstacle permitting an affirmance of the judgment of the court below. The court, with respect to the evidence considered, charged the jury:

"Evidence has been offered for the purpose of showing that other offenses were committed, consisting of false entries in the books of the county treasurer relating to matters in the redemption department of the county treasurer's office during the period when the defendant had charge of that department, and also in the effort to show misappropriation of various amounts of the funds of Salt Lake county.

"You are instructed that such evidence is to be considered only for certain restricted purposes, that is, such evidence is to be considered so far as it tends to prove or disprove any intent on the part of the defendant to commit the specific crime charged, or in so far as it tends to prove or disprove a common scheme or plan

embracing the commission of other crimes so related to the one charged that the proof of one tends to establish the other, or in so far as it tends to establish the identity of the defendant as the person who committed the offense specifically charged in the information, if you find from the evidence that these other acts have any tendency so to do.

"It is for you to determine from a fair consideration of all the evidence in this case who made such wrong or false entries, and with what intent they were made, and whether or not they may not have been innocently made through mistake."

The charge was excepted to, the giving of it assigned as error, and the assignment discussed in connection with other assignments relating to the admission of the alleged objectionable evidence. I think the charge wrong, misleading, and prejudicial. By such charge the court did not direct the jury that evidence of facts or conduct relating to other offenses could be considered in determining with what intent, motive or purpose certain similar acts or conduct relating to the charged offense were done or committed. In other words, the court did not direct the jury that evidence of other offenses or acts committed by the defendant, consisting of false entries in books of the redemption department of the county treasurer—if committed by him—could be considered by the jury in determining with what intent or for what purpose or motive the defendant made the alterations, if made by him, relating to or connected with the charged offense. What the court charged in such respect was that evidence of the commission of "other offenses," consisting of false entries, and "misappropriation of various amounts of funds of Salt Lake county," could be considered as tending to show "intent on the part of the defendant *to commit the specific crime charged*" (italics added).

If the defendant committed the "specific crime charged" —that is, if he unlawfully took the money and appropriated it to his own use—the very nature of such acts, and the commission of such an offense, carries with it the criminal intent, in which case, as has been seen, evidence of other

like offenses is inadmissible. In other words, if the defendant took and appropriated the money to his own use—stole it—it is mere jargon to talk about with what intent he stole it, with what intent he "committed the specific offense charged." Such a charge is tantamount to directing the jury that evidence of the commission of "other offenses" may be considered in determining whether the defendant committed the charged offense, which the authorities teach may not be done. As well say that evidence of the commission "of other offenses" of robbery may be considered, to determine with what intent the defendant committed a charged specific offense of robbery, whether he committed it because he was "broke," or "hard up," or to donate the fruits of his crime to some eleemosynary institution.

Then the court further charged that evidence of the commission "of other offenses" may be considered by the jury in determining "who committed the offense specifically charged in the information," whether the defendant committed it, or whether another committed it; that is to say, in determining whether it was the defendant or another who committed the specific charged offense, the jury could consider evidence of "other offenses" of false entries, and of "misappropriation of funds of the county," and, too, note the language of the charge, regardless of whether such other offenses were committed, or such false entries or misappropriations made, by the defendant or not. And then the court left the whole matter to the jury to consider and determine, not only as to the weight to be given the evidence referred to, but in effect the competency and admissibility of it, whether it tended to prove or disprove this, that, or another thing, or what it tended to prove, or whether it tended to prove or disprove anything.

I cannot yield judicial sanction to such a charge. Thus, for the reasons stated, I think the judgment should be reversed and the case remanded for a new trial.

On the subject of good character I concur in the holding that the request of the defendant was properly refused.

Portions of the request may be proper enough, but they were so coupled and connected with matters of mere argument as to render the request as a whole objectionable.

As stated in the prevailing opinion, no exception was taken to the charge which the court gave on the subject of good character. Since no exception was taken, I think the charge is not properly before us for review, and therefore no opinion ought to be expressed concerning it. The charge, however, in the prevailing opinion, is as fully and completely exhibited as though it were before us for review, and some opinions expressed concerning it. If the charge is exhibited as expressing a proper charge on the subject, or as constituting all that need be charged theron, I express my disapproval of it.

The first sentence of the charge is, as I think, erroneous, because embracing an unwarranted qualification or condition as to the admissibility or consideration of evidence of good character. A defendant may avail himself of such evidence, regardless of whether the presumption of innocence has or has not been overthrown, and regardless of whether the evidence on the part of the state is weak or strong, doubtful or convincing. In every criminal case a defendant is entitled to put good character in evidence as a relevant and material fact, regardless of the character or quality of the evidence adduced by the state, whether conclusive or inconclusive, direct or circumstantial. To tell a jury that the defendant is permitted to put in evidence of good character when the presumption of innocence has been overthrown is a misdirection. Such a direction is analogous to the old theory, long abandoned in this country, that evidence of good character is to be considered only in doubtful cases, and not when clear or convincing proof of guilt is shown. A defendant is entitled to put in such evidence and to have it considered in determining whether the presumption has or has not been overcome, and in determining his guilt or innocence of the offense charged.

The other portions of the charge do not enlighten or aid

the jury on the subject. It but admonishes them that evidence of good character should be considered by them in conection with all the other evidence in the case. To tell the jury to consider such evidence, not to disregard it, is not telling them much of anything. The jury were in effect told that when the evidence was received. The rule in this as in many other jurisdictions is that it is the duty of the court to instruct the jury as to the purpose and effect of evidence of good character and the weight which the jury may give it, that it alone may be sufficient to create a reasonable doubt of the defendant's guilt, where without such evidence no such doubt might exist. *State* v. *Brown,* 39 Utah 140, 115 P. 994, Ann. Cas. 1913E, 1, and notes; *People* v. *Hancock,* 7 Utah 170, 25 P. 1093; *State* v. *Van Kuran,* 25 Utah 8, 69 P. 60; *State* v. *Harris,* 58 Utah 331, 199 P. 146; *People* v. *Bell,* 49 Cal. 485; *People* v. *Shepardson,* 49 Cal. 629; *People* v. *Doggett,* 62 Cal. 27; *People* v. *French,* 137 Cal. 218, 69 P. 1063; *State* v. *Cushing,* 14 Wash. 527, 45 P. 145, 53 Am. St. Rep. 883; *People* v. *Elliott,* 163 N. Y. 11, 57 N. E. 103; *Edginton* v. *U. S.,* 164 U. S. 361, 17 S. Ct. 72, 41 L. Ed. 467.

The reason for the rule, and as stated in the Brown and in other cases there cited, is that a jury of inexperienced laymen, without assistance from the court, instructing them as to the purpose and effect of such evidence, and the weight which they may give it, could hardly be expected to apply the rules applicable to that kind of evidence, and if not so instructed, there is danger of incorrect inferences and of illogical conclusions, which may be made by jurors from such evidence. The rule as stated in the Brown Case is quoted and approved by the federal court in the case of *Egan* v. *U. S.,* 52 App. D. C. 384, 287 F. 958, and in *Jones* v. *U. S.,* 53 App. D. C. 138, 289 F. 536. It was again reviewed and considered at some length in the case of *State* v. *Harris,* supra, and again approved, the court there citing additional authorities. The request to charge considered in the Harris Case, and which the trial court refused, is

fully set forth in the opinion in that case. This court by unanimous opinion held that the request complied and was in harmony with the opinion of the majority members of the court in the Brown Case, "and because we think the requested instruction was right in every way, it is approved once more," and the refusal of the trial court to give it was held over. The charge here, in my opinion, is not in harmony with such holding.

A later case from this jurisdiction, *State* v. *Cerar,* 60 Utah 208, 207 P. 597, is cited by the state as supporting its contention, and that all that is necessary to charge on the subject is as was here charged. In my opinion, the Cerar Case does not support such view. The rule as announced in the Brown and in the Harris Cases, was in no particular in the Cerar Case overruled, modified, or even criticized, nor did the court there in any particular say anything in disapproval of it, nor was it held that what was charged in that case was all that was necessary to charge on the subject.

I thus think the rule announced in the Harris Case approving the rule in the Brown Case, is the established rule in this jurisdiction and should be followed. I am aware of some conflict in the authorities on the subject in other jurisdictions, and as noted in the cases annotated in Ann. Cas. 1913E, 16, and 10 A. L. R. 8, but I think the undoubted weight of authority supports the rule as established in this jurisdiction. At any rate that is the rule here and ought to be followed.