## STATE v. BARONI

No. 5173. Decided April 27, 1932. (10 P. [2d] 622.)

*O. K. Clay*, of Price, for appellant.

*Geo. P. Parker*, Atty. Gen., and *L. A. Miner*, Deputy Atty. Gen., for the State.

CHERRY, C. J.

The defendant was tried by jury upon an information containing two counts: The first charging assault with intent to commit murder, and, the second, assault with a deadly weapon with intent to do bodily harm. He was convicted of the second count, and appeals.

No claim is made that the evidence is insufficient to sustain the verdict, but it is contended that errors of law were committed during the trial for which the judgment should be reversed.

The first complaint is that the court erred in submitting the offense described in the first count to the jury because of lack of evidence to establish deliberation or premeditation, which it is claimed was necessary to constitute the crime of assault with intent to commit murder. We do not inquire into the merits of this claim for the reason that the alleged error, if any, was wholly harm-

less and immaterial, since the defendant was acquitted of the charge.

The next contention is that the court erred in refusing to give certain requested instructions to the jury to the effect that the defendant had the right to defend a member of his family. This question does not involve the correctness of the requested instructions as a general matter of law, but depends upon the necessity and propriety, under the facts in the case, of charging at all upon the subject.

The Shiro and Baroni families resided on opposite sides of the street in Helper. Each had a boy and a dog. The scene opens with a fight on the street between the dogs, to which the boys were attracted. Out of the dog fight developed an altercation between the boys, Joe of the house of Shiro, the complaining witness, and a husky lad of twenty, and Paul, a boy of fifteen, the son of the defendant. Joe slapped Paul, and Paul hurled a rock against Joe, and fled across the street to his home calling for his daddy. Joe pursued him, and, as some of the witnesses say, threw rocks at him. The defendant was seated on a bench before his house smoking his pipe in peace. Attracted by the cries of his son he started from his repose and entered the combat. His boy Paul retired to safety, and the battle proceeded between defendant and Joe. Upon the appearance of the defendant, Joe ceased his attack and beat a retreat towards his own home, covering his retreat by throwing rocks at the defendant who was in hot pursuit. The defendant overtook Joe out in the street where the two clinched and went to the ground. In the struggle defendant stabbed Joe three times with a pocket knife. Two of the wounds perforated Joe's lungs. Joe says the defendant stabbed him when he first reached him, that he then hit defendant, got him down, and took the knife away from him. Defendant says he did not use his knife until after Joe knocked him down, got on top of him, choked him, and then only to defend himself against bodily harm from Joe.

It was not claimed or proved that Paul was threatened with any real or apparent danger at the time. That his peril ended with the first appearance of the defendant clearly appears. There was therefore no basis in fact for the claim that the defendant acted in defense of a member of his family, and the court properly refused to give the instructions requested on the subject. The court did fully charge the jury concerning the right of the defendant to defend himself. No complaint is made by defendant upon that subject. Another assignment of error is that the court declined to give certain requested instructions relating to the right of the defendant to defend himself against apparent danger. Under the facts in this case it is doubtful if that question was presented at all. The defendant's version of the transaction was that he never drew his knife or stabbed the complaining witness until the latter had him down on the ground, choking him, and threatening to kill him, and then only to defend himself from bodily harm. The description of the situation as given by the defendant himself presented a case of real and actual danger; however, the court did instruct the jury:

"That the defendant had the right to use such means of self-defense as appeared reasonably necessary to him. His right of self-defense is not limited to the absolute necessity of the occasion but only by what reasonably appeared necessary to him at the time and viewed from his standpoint. Every person has the right to protect himself against the assault of another and in doing so he may use any force that appears to him to be necessary. He is not required to use the same cool judgment that he uses in the ordinary affairs of his business, but such judgment as might be reasonable under the circumstances. If you believe from the evidence that the circumstances surrounding the wounding of Joe Shiro were such as to excite the fears of a reasonable person, and they did excite the fears of the defendant and that he honestly believed it was necessary to wound Joe Shiro in defending his person from great bodily injury, then your verdict should be not guilty."

In view of the evidence in this case, the instruction given by the court was sufficient upon the subject, and no error

was committed in declining to charge more fully upon the defendant's right to defend himself against apparent danger.

The next point argued is that the court erred in not giving a proper instruction concerning evidence of good character. At the trial one witness was called who testified that he knew the defendant's reputation for peace and quiet in the community, and that, so far as he knew, it was good. Defendant requested the court to give an instruction upon the subject which was refused. The instruction requested was identical with that which we held in *State* v. *Judd,* 74 Utah 398, 279 P. 953, to be mere argument and objectionable. It is not necessary to quote the instruction here because it is not relied upon by defendant. The contention is that, since the subject-matter was called to the attention of the court, the court was bound to give an appropriate instruction upon the subject. The instruction given by the court was:

"There has been evidence given in this case as to the good character of the defendant for peace and quietude. Such good character, when proved, is a circumstance to be considered by you in connection with all the other evidence in the case in determining the guilt or innocence of the said defendant. When such character is proved it is a fact in the case, and should be considered by you in connection with all the other testimony in the case, and you have the right to give such weight to it as you think it is entitled to."

While an exception was taken to the giving of this instruction, no complaint is made of any statement contained in it. The contention is that under the circumstances even though not requested by defendant, the court was bound to go further and charge to the effect that the circumstances might be such that proof of good character alone would be sufficient to create a reasonable doubt of defendant's guilt, when without it no such doubt would exist. This court has held that the refusal to give such an instruction when requested by defendant constituted error. *State* v. *Harris,* 58 Utah 331, 199 P. 145, 146, and cases there cited. But in the case before us there was no request for such a charge. The ques-

tion presented by the record here is whether the court was bound to give the instruction contended for on its own motion. The question must be answered in the negative. *State* v. *Judd,* supra. Error cannot be predicated upon the failure to give the fuller and more extended charge on the subject unless the attention of the trial court is called to the matter by an appropriate request.

It is finally argued that the trial court erred in refusing to instruct the jury to disregard a statement made in argument by the district attorney. The defendant while testifying as a witness for himself said he had been arrested and paid a fine of $25 when a gun was taken from him. He was asked by his counsel if he had ever been arrested for fighting, and he answered, "No, no fight in my life." On cross-examination he testified through an interpreter as follows:

"Q. You were arrested for carrying concealed weapons, were you? A. Yes.

"Q. Weren't you arrested just about a year ago, or such a matter, for a shooting with Pete Costanza? A. He says that is the time that he got in a fight with Pete Costanza because he owed a board bill, and his is still owing, and instead of paying him he was going to give him a whipping.

"Q. And you shot at him twice, didn't you? A. He says he didn't shoot at him but Pete took the gun away from him.

"Q. You tried to shoot at him? A. No."

In his argument to the jury the district attorney said:

"The defendant tells you himself that within the past year he has drawn and used a gun in an efort to collect a bill."

Defendant's counsel asked the court to instruct the jury to disregard the statement. The court said:

"The jury, I think, heard the evidence and may pass upon it. The court will say this to the jury: That any statements made by counsel on either side that are not in harmony or in keeping with the evidence, or with a fair and proper interpretation or inference from the evidence, must not be considered by you in any way. You may continue."

The defendant noted an exception. It is improper for a prosecuting attorney to make a statement of fact to a jury, not based upon, or which may not be fairly inferred from, the evidence. But to constitute reversible error the unuathorized statement must be of an important fact, and must be clearly unfair and outside the record. Courts cannot stop, during arguments, to decide fine questions of interpretation of or inferences from evidence. Here there was some basis in the evidence for the statement. The only complaint that can be made is that the district attorney inferred too much from the evidence. In view of the situation and of what the court said about it, we think no error can be predicated on the occurrence.

The judgment is affirmed.

ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

STRAUP, J.

I concur. The charge on good character was insufficient, not only in the particular stated in the main opinion, but also in other particulars and as stated in the cited case of *State* v. *Harris*. The charge as far as it goes is not bad for misdirection, but faulty for nondirection and in not sufficiently charging the law applicable to the subject. When charging thereon, I see no good reason why the substance of the requirements stated in the Harris Case should not be given whether so requested or not. It is just as easy for the court to do that as to try to do it in some way not in compliance with such requirements. However, since the rule is that, where a charge as far as it goes is good and is not a misdirection, but is not as full or complete as it should be, to impute error, a proper request is required which here was not tendered, I concur.