## A. D. JACKSON v. THE STATE.

### No. 2570. Decided November 12, 1902.

**1.—Embezzlement—Evidence.**

On a trial for embezzlement of money by an agent, where defendant claimed to have deposited a portion of the money in the bank, it is competent to prove that when the owner of the money called at the bank to get the money she was refused and told it was all drawn out by defendant; the latter statement, which was made by the cashier, was harmless, it being abundantly proved otherwise that all the money deposited by defendant had been drawn out by him.

**2.—Same.**

On a trial for embezzlement, where it appeared that the money embezzled was the proceeds of land sold by defendant as agent for his aunt, it was competent to prove that defendant said he was going to sell the land and take care of his aunt; and testimony as to the sale of the land and defendant's participation therein was admissible as res gestae, and tended to establish defendant's agency both in obtaining and having custody of the funds derived from the sale of the land.

**3.—Same—Opinion—Evidence.**

On the trial for embezzlement, the statement of the attorney who drew up the papers concerning the original transaction, to the effect that defendant "seemed very much surprised about the note," being but a shorthand rendering of the facts, was admissible as to defendant's appearance when the note he had executed was mentioned.

**4.—Same—Declarations of Defendant.**

On a trial for embezzlement, a statement by defendant, to a witness, before his arrest, that he received the money and had spent it, but claimed that

his conduct only involved a breach of trust, was admissible as evidence against him.

### 5.—Same—Evidence as to Ill Feeling of Witness.

On a trial for embezzlement, while it is competent for defendant to show the ill feeling of a witness against him,.it is too far fetched for such purpose to ask the witness with regard to a proposed sale to defendant for the prosecutrix of property, which defendant failed to purchase, owned by the father of witness.

### 6.—Same—Charge of Court.

On a trial for embezzlement of the proceeds of land sold by defendant under a power of attorney of date the 2d day of August, 1901, and it appeared that defendant had invested in his own name, and otherwise disposed of the proceeds, or a portion thereof; and that on the 15th day of August, 1901, he executed his note to his principal for the money received by him; Held, the court in its charge properly regarded the execution of the note as a final settlement between the parties, and limited defendant's liability to any possible conversion before the execution of the note.

### 7.—Trust Fund—Burden of Proof.

Where a trust fund is received and the execution of the trust is peculiarly within the knowledge of the trustee, the burden is upon him to account for the trust fund.

### 8.—Embezzlement—Charge.

On a trial for embezzlement, the court is not required to define "embezzlement" and "fraudulent misapplication," since the meaning of these terms is well understood.

### 9.—Same—Evidence Sufficient.

See opinion for facts stated held amply sufficient, under the appropriate charges of the court, to warrant a conviction of embezzlement by an agent of trust funds, the proceeds of a sale of land by him under a power of attorney.

Appeal from the District Court of Bexar. Tried below before Hon. John H. Clark.

Appeal from a conviction of embezzlement; penalty, five years imprisonment in the penitentiary.

The statement of the essential facts in the opinion is so full as to obviate a further statement.

*Onion & Henry,* for appellant, filed an able brief and argument upon the sole proposition of the insufficiency of the evidence to sustain the conviction, citing Webb v. State, 8 Texas Crim. App., 311; Stallings v. State, 29 Texas Crim. App., 220.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of embezzlement, and his punishment assessed at confinement in the penitentiary for a term of five years; hence this appeal.

The testimony on the part of the State shows that appellant, who was a negro, induced his aunt to sell a small place she owned in Gonzales County for $1400; that this money was turned over to him by his aunt, prosecutrix, and that he failed to account for the same. Appellant's defense was based on two contentions. He claimed that under a power of attorney which prosecutrix executed in his favor he was authorized to use her funds as he saw fit, and he invested the same in some sort of an insurance company at San Antonio, called the "National Protective

Association;" that, although this investment was in his own name, it was for the benefit of the prosecutrix; that, if said funds were lost, it was her loss.  He also claimed that the money was borrowed by him from her, and that he gave a note for the same, which was a sufficient answer to the charge of embezzlement.

Appellant made a motion to quash the indictment.  The indictment is in two counts, and the conviction was under the first count.  We have examined said count, and find no error in the action of the court overruling the same.

Bills numbers 1 and 2 relate to objections urged by defendant to certain testimony adduced from the prosecutrix, Mary Ann Read.  We do not believe the objections are well taken to this evidence; but if so, the evidence is of an immaterial character, and it does not constitute reversible error.  Nor does bill number 3 point out any error.  The certificate of the judge thereto suggests that the remark of State's counsel was not heard by the jury, and that no instruction was asked to the effect that the jury could not consider said remark.  In the absence of such requested instruction, the remark attributed to the State's counsel would not constitute error.

The fourth bill of exceptions, as qualified by the judge, shows that as soon as it was called to his attention that the county attorney was improperly alluding to appellant as this "fellow" the court instructed him thenceforth to refer to him by name or as defendant.

With reference to the fifth bill, we think it was competent for the State to show by Mary Ann Read that she called at the bank to see if she could get her money, and that it was refused her.  But, even if it was not competent for the State to show what the cashier said to her, to wit, when she called for her money, that he told her it was all drawn out, we do not understand that this matter was controverted.  It appears to have been conceded.  At any rate, it was abundantly proven that all the funds appellant may have deposited in said bank of Wood & Sons had been drawn out by appellant.

We believe it was competent for the State to show that appellant said he was going to sell Mary Ann Read's land, and then take care of her.  So far as the sale of the land was concerned, that was not controverted.  That he said he was going to take care of the prosecutrix, his aunt, was certainly not calculated to injure him.  In this connection we also understand that appellant objected to any testimony regarding the sale of the land and appellant's participation therein.  It occurs to us that this is a part of the res gestae of the offense charged against appellant.  It shows how appellant got hold of the money of the prosecutrix, and because, forsooth, the testimony may tend to show that he overreached his aged aunt in getting the money, would afford no reason for its rejection.  It would tend also to show his agency in the matter, both in the obtention and custody of the funds derived from the land.  We think all this testimony was admissible.

When A. B. Story, a witness for the State, was on the stand, he was

asked the question by the State, to wit: "At the time you drew the papers on the defendant, had he made any claim about the note?" He replied, "I don't remember the exact language about it. He seemed very much surprised about the note." This was objected to on the ground that it was not the statement of any language used by appellant, but the statement of the opinion of the witness as to the appearance of appellant at the time the note was mentioned to him. The judge's qualification to the bill states: "The objection made was that the question was leading, and witness then stated that I brought the note in the conversation. The district attorney then asked witness, 'What did he say then?' to which witness replied: 'I don't remember the exact language about it. He seemed very much surprised about the note.' Defendant's counsel then stated he objected to the answer. The objection was overruled, and defendant's counsel excepted; and that this was all that was done or said." It appears to us that appellant's counsel should have stated some reason for his objection to the answer more than is signified by the explanation of the judge. Concede, however, that the bill is correct as stated originally,—that is, that the answer did not state a fact, but gave an opinion of the witness as to the appearance of appellant when the note was mentioned,—still we think, under the authorities, this testimony was admissible, under the rule which authorizes in certain character of cases an opinion or a shorthand rendering of the facts. Miller v. State, 18 Texas Crim. App., 232; Powers v. State, 23 Texas Crim. App., 42; Meyers v. State, 37 Texas Crim. Rep., 208; Bennett v. State, 39 Texas Crim. Rep., 639; Spangler v. State, 41 Texas Crim. Rep., 424.

Bill number 8 does not seem to have been allowed by the judge, as he certifies that he had no knowledge of the same, and found no reference to the same in the stenographer's notes. We would suggest, however, that in disallowing or passing on bills the judge should distinctly allow or disallow the same. However, the matter presented in said bill is of a trivial character. Even if the question was improper, the answer elicited amounted to nothing, as the witness stated that he did not remember. The same remarks here made with reference to this bill also apply to the subsequent bill, number 9.

Looking at bills 10 and 11, which appear to have been considered together by the court, they appear to be somewhat complicated, and it is rather difficult to determine from the qualifications whether the same were allowed or disallowed. Looking to the qualification to bill number 10, we are referred for the answer of the witness to bill number 11, and, coming to the qualification to bill number 11, it would seem that the objection was to the question propounded, and this was because the question was leading. If we look to this qualification, the question was not of a leading character. However, concede that the objection was made and the answer elicited, and that some sufficient ground of objection was stated at the time, we think this answer as given was relevant and competent testimony in this case. This witness answered as fol-

lows: That appellant, on the occasion inquired about, went on to say: "Aunt Ann thinks she can put me to trouble through the court, but it was only a breach of trust. She trusted me with the money, and she can't have anything done with me about the money." This was a statement of appellant, made to a witness while he was not under arrest, which had a direct bearing on the case; that is, he acknowledged the receipt of the money, and claimed that his conduct only involved a breach of trust. Of course, a mere breach of trust would not inculpate appellant; but the statement showed the receipt of the money, and that appellant had spent the same. His claim that it was a mere breach of trust, if true, would exonerate him, and it would be incumbent on the State to contradict him as to this.

As to the matters involved in bill number 12, we think it was competent for appellant to show a bad state of feeling or some animus on the witness' part toward appellant, but it does occur to us that the question asked in regard to a proposed sale of property owned by the witness' father to appellant for his aunt was too far-fetched as a basis to show a state of ill feeling between the parties. If the witness had been asked the question as to a state of ill feeling between himself and appellant, and he had denied such state of feeling, then it would have been competent to have refreshed his recollection by referring to the incident inquired about.

Appellant objected to some of the charges of the court. Among other things, the court gave the following instruction: "If the defendant, upon agreement with Mary Ann Read, on or about the 15th day of August, 1901, executed to her his note for money received by him from her, then you can not find the defendant guilty, unless you believe from the evidence beyond a reasonable doubt that before that time the defendant had fraudulently embezzled, misapplied, and converted to his own use said money, or a portion thereof, under the rules hereinbefore given you. But if you believe from the evidence beyond a reasonable doubt that prior to that time the defendant had fraudulently embezzled, misapplied, and converted to his own use said money, or any portion of the same, amounting to the value of fifty dollars or over, then the execution of said note would be no defense." Appellant objected to this charge on the ground "that it was misleading, and not supported by the evidence; and, further, because it limited defendant's defense to the execution of the note, when in truth and in fact defendant had three defenses under the evidence: (1) That he was the agent of Mary Ann Read under the power of attorney that was in evidence and executed by Mary Ann Read on August 2, 1901, when the $1400 was turned over to him, wherein he was given full authority to act as her agent in such manner as to him might seem best with all her property, either real or personal; and because it was shown by the witness Mr. Wood, and the checks introduced, that defendant, previous to August 15, 1901, the date of the execution of the note, had invested several hundred dollars of this money that he was charged with em-

bezzling in the National Protective Association, which was done previous to the execution of the note, and by virtue of said power of attorney; but, as the jury was not informed about this phase of defendant's defense, they could naturally conclude under said charge that any money used by defendant previous to August 15, 1901, notwithstanding said power of attorney, was also without authority and embezzled. And because (2) defense relied upon by defendant was that derived from the evidence of Mary Ann Read herself, who testified that defendant was to invest said money, and she was to receive $100 per month from same and 10 per cent. interest, and hence, if she gave the defendant the right to invest said money, and through bad judgment and mismanagement he invested it, and lost same, though it was previous to August 15, 1901, the date of the execution of said note, still he would not be guilty under such facts. And because the third defense of defendant was that this money was loaned him by Mary Ann Read, and that the execution of the note was but the carrying out of the agreement of the loan." We understand from this that appellant insists the jury should have been more specifically instructed with reference to his defenses; that is, the court should have informed the jury more directly than was done with regard to the power of attorney under which appellant claimed to have acted, and have construed the effect of the same for the jury. It will be borne in mind that the facts show that on the 2d day of August, 1901, Mary Ann Read sold her farm of 100 acres in Gonzales county to a Mr. Pryor for $1400, that this $1400 was taken in hand by appellant with the consent of Mary Ann Read. On the 3d of August appellant deposited in the bank of John Wood & Sons, at San Antonio, in his own name, $1150. On the 15th of August appellant executed to Mary Ann Read, on her complaint to him that, if anything happened, how would she get her money, a note of $1382.50. Now, between the 3d and the 15th days of August there appears, from the bank's account with appellant, to have been drawn by appellant of said fund $630. By referring to the testimony of W. F. Wood, one of the proprietors of the bank, it will be seen that of this $630, $475 may have been drawn out by appellant on behalf of the National Protective Association; that is, he may have invested that amount in said concern. This would leave unaccounted for of the funds drawn $155, which appellant must have drawn out on his own account; that is, looking at the account itself, one item on August 5th of $75, one item on August 13th of $25, one item on the 14th of $50, and another of $5 are unaccounted for. Now, the power of attorney, which was executed on the 2d of August, under which appellant claims that he had the right to use the money of the prosecutrix as he saw fit, contains this clause: Prosecutrix appoints appellant "my true and lawful attorney in fact for the purpose of taking charge of and managing my property, whether real or personal, and to that end I hereby clothe my said attorney with full power to take charge of my said property, wherever situated, and to handle, manage, and control the same in such manner as to him

may seem best for my interest." If it be a proper construction of said power of attorney to authorize appellant to invest said fund in his own name, and in any property or enterprise which he might approve, then what follows? We have him investing of said fund $475 in the National Protective Association, and, concede also that he intended this for the benefit of the prosecutrix,—about which there is no proof,—we still have unaccounted for, drawn out, but not shown to have been invested in anything for prosecutrix, the sum of $155. Now, the court in its charge appears to regard the execution of the note on the 15th of August as a final settlement between the parties,—that is, after the 15th there was no longer a trust fund in appellant's hands, but a debt due from appellant to prosecutrix,—and predicates the State's case upon any possible conversion before the execution of the note. In this latter conclusion we think the court was right. And, furthermore, if appellant was shown to have disposed of any of the trust fund prior to that date, and he then accounted for all of the same, to wit, if he had shown that of the $630 missing he had invested this money, though in his own name, in the National Protective Association, or in some other enterprise, and it was shown that he intended this for the benefit of prosecutrix, then the State's case would be fully met, and it would have become necessary to have more specifically instructed the jury with reference to appellant's right under the power of attorney than was done; but, inasmuch as he made no pretense of accounting for $155 of the fund, then we fail to see how the failure of the court to further define his rights in the premises was calculated to injure him. Moreover, there is another view of this case, which appellant has not attempted to meet or explain, and the burden was certainly cast on him to do so. On the 2d of August appellant received $1400 of prosecutrix's money. Sixty-three dollars of that amount appears to have been paid out as expense money in securing the sale and conveyance of the property. He deposited on the 3d $1150. This leaves unaccounted for $187. If appellant had that money in his pocket, he could very easily have shown it, or, if he had expended it for the benefit of the prosecutrix, the information was in his possession. So that it follows that this amount of the original fund is absolutely unaccounted for, and under the court's charge the jury were authorized to convict him on account of this defalcation. It is the received doctrine that where a trust fund is received, and the execution of that trust is peculiarly within the knowledge of the trustee, the burden is cast on him to account for the trust fund. While the failure to account for trust money of itself is not ordinarily sufficient to authorize a conviction, this, in connection with other circumstances, such as concealment, denials, etc., are sufficient. 2 Bish. New Crim. Law, sec. 376; Evans v. State, 41 Texas Crim. Rep., 54. Consequently, we do not believe it was necessary for the court to have charged on this branch of the case more fully than was done, simply because a fuller instruction on the effect of the power of attorney and appellant's rights thereunder to dispose

of the trust fund ·could not have availed him as to moneys received by him, and which he did not undertake to account for. We would further observe in this connection that the account stated between appellant and Wood & Sons, bankers, shows that the same was continued after the 15th of August, and up to and including the 12th of December; and it also shows other deposits made, in all amounting to $1545. There is also a statement showing a sale of some personal property, and a statement of its value as $120.40, which appellant evidently received. Appellant appears to have drawn out all of said deposits, but subsequent to the 15th it is not shown for what these items were expended. We do not consider that part of the account as having a material bearing upon the issues.

Appellant also complains of the failure of the court to define the terms "embezzlement" and "fraudulent misapplication." The meaning of these terms is well understood, and we do not think the court was required to give any special definition of the same, further than was done, in the charge defining what it would take to constitute a fraudulent conversion.

The special charge asked by appellant, and which was refused, was an instruction to the jury to return a verdict of not guilty on the facts, and this brings in issue the sufficiency of the testimony to sustain the verdict. In this connection appellant cites us to several cases, and, among others, to the case of Webb v. State, 8 Texas Crim. App., 310, insisting that said case is analogous to this case, and that the principles of law there enunciated should control the decision here. We understand the Webb case to announce the correct doctrine on the subject of embezzlement, but in that case the facts were different. There the party was authorized to dispose of the property—which was sewing machines—for horses, but he was to account to the company in money. He did dispose of the machines for horses, and tendered the horses to the company, which they refused to receive. The horses were then his, and the court held properly that he was not a trustee for the company, either as to the horses or as to the money received for them; that there simply existed between him and the company a debt due under the arrangement. Here, in order for the case to be analogous, if appellant had shown that he had disposed of all the trust funds for stock or property in the National Protective Association, and, when called on to account, had tendered that to the prosecutrix, and she had refused to receive it, and he afterwards sold the stock and appropriated the proceeds, then there would be some similarity between the cases. Appellant, in his able brief, cites us to a number of statements made by prosecutrix in regard to this transaction, and there are some expressions which show that she was an ignorant negress, and not versed in business matters; but we think that her testimony, taken as a whole, does show emphatically that appellant, by his methods, overreached her, and induced her to sell her little farm, and also to intrust him with the proceeds of the same. But all the while she believed that this money was deposited in

bank for her benefit; that she became uneasy about it; and at length, on the 15th of August, he induced her to take his note, the terms of which she evidently did not understand. The court, however, gave him the full benefit of this transaction, and of this he can not complain. The jury were told that, if prior to this there was such a fiduciary relation existing between prosecutrix and appellant as made the trust funds the subject of embezzlement, and he appropriated same to his own use, then he was guilty. In this, we think, the court was correct, and we believe the testimony fully supports this; and that the court's charge was not, under the circumstances, calculated to injure appellant.

The judgment is affirmed.

*Affirmed.*

[Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]