[Crim. No. 2196.  Second Appellate District, Division Two.—June 25, 1933.]

THE PEOPLE, Respondent, v. HARRIE W. BENDER et al., Defendants; W. W. McCANDLESS, Appellant.

Henry G. Bodkin for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, Buron Fitts, District Attorney, and John Barnes, Deputy District Attorney, for Respondent.

PARKER, J., *pro tem.*—Defendants were indicted by the grand jury of Los Angeles County and charged with three distinct offenses of embezzling money. McCandless, appel-

lant here, demanded and was granted a separate trial. He was found guilty on all three counts and presents this appeal from the judgment and order denying his motion for a new trial. It is the contention of appellant that the evidence is not sufficient to support the verdict of the jury on any of the counts, and also that the trial court erred to his prejudice in the admission of certain evidence.

It might be here noted that the case is now before us on rehearing after determination heretofore by this court. In our former opinion we reversed the judgment as to the first count and affirmed the judgment as to counts two and three. Appellant thereafter filed his petition for a rehearing on counts two and three. The petition was granted in general terms, that is to say, the order was made that a rehearing be granted, without reference to the counts. We do not feel that we would be precluded from again considering count one, but inasmuch as we have reached the same conclusion thereon we will not further discuss this perhaps interesting point of procedure. However, though still of the opinion that there is not sufficient evidence to support the conviction as to count one, we shall discuss the case in its entirety to the end that a complete disposal thereof may be herein made.

It appears without dispute, and indeed is conceded, that appellant had been a deputy assessor of the county of Los Angeles from 1918 until some time after the occasions charged in the indictment, and that during all of said times defendant Bender had also been a deputy and chief clerk in the assessor's office of said county. We deem it unnecessary to set forth herein the entire scheme of assessment, levy and collection of taxes as provided in the Political Code. It will suffice to say that that code does provide for and make a classification of all property for tax purposes. The most general classification, and the only one which will concern us here, is that of real and personal property. All property is assessable as of March 1st of each year. Real estate assessed is listed by the assessor with the valuation thereon placed by that official, and in due course the assessment-roll, containing description of said property, goes to the board of equalization of the county, where the values are adjusted, and the next step is through the auditor and then on to the tax collector. Personal property is carried upon a separate

roll, excepting in cases where the owner of such personal property is also the owner of real estate, which real estate, in the opinion of the assessor is of sufficient value to insure the payment of the personal property tax, in which latter case the personal property is carried on the real estate roll, the taxes due thereon being a lien against the real estate of the same owner. Whenever, in the opinion of the assessor, there is not sufficient real property to secure the payment of the tax upon the personal property of the taxpayer, the assessor shall and does collect the tax due on the personal property forthwith after March 1st of each year. The provisions of the Political Code governing are from section 3820 to section 3831, inclusive. It is around these collections of personal property taxes that the present case centers.

At a time before the indictment was returned and after the dates of the offenses charged in the three counts, there was being conducted an investigation into alleged discrepancies regarding the handling of personal property taxes in the office of the assessor. Amongst others engaged in this investigation was the district attorney, including the office staff of that official and his office investigators. During the inquiry appellant was called and questioned. Here we stop to note that the connection of McCandless with the inquiry was such that any and all statements made by him were free from any influence, direct or indirect, that might taint the same to a point of inadmissibility as far as the point might be urged that such statements were not free and voluntary. In the presence of the district attorney and others conducting the investigation, and with full knowledge of the purpose of the inquiry, appellant made statements and admissions showing the following concerning the methods used in the handling of taxes, particular reference being to the personal property taxes: That appellant had charge of the statements in the case of unsecured personal property; that during the years 1930 and 1931 appellant did not have any tax receipt book issued to him; that defendant Bender would collect money due for taxes and hand the same to McCandless, or the check, as the case might be, and that this had been done many times, so frequently that he could not remember; that the working arrangement which appellant had with Bender was with reference to money that was not turned in to the assessor, and that in most of

these instances he gave Bender half, not being able to recall how many times this happened; that his arrangement with Bender in regard to collection of taxes and splitting the money was that the latter gave him the checks and he, appellant, deposited them and gave Bender half of the money; that those were general checks which Bender took in over his desk, and appellant could not remember the instances and was himself not familiar with the people; that as a general rule appellant cashed the checks at his bank. Appellant further stated that the arrangement followed an occasion when Bender pulled a statement out of the files and kept it in his desk until the season was over; that Bender would keep such statements and when he figured the transaction was closed he would send McCandless down and get payment from the taxpayer; that he, appellant, saw how easy it was and "fell for it" himself during the last few years; that he, appellant, knew Bender had been taking the checks for years and that appellant fell into the scheme along about 1929, although he did not remember exactly the time; that there was no definite arrangement about how the money should be divided; that during the last year he, appellant, pulled statements from the file himself, and also a couple before that time, and that sometimes he paid Bender by check payable to "cash". After making this statement appellant was not held in custody, at which he expressed surprise, apparently feeling that he would be immediately arrested and held.

One of the reasons why a rehearing was granted herein was the claim of appellant that regardless of the admissibility of this statement the trial court had admitted it only with reference to count three. We have followed through the transcript very closely and find that there is no merit in this claim. It is true that the statement or admission contained other things with reference to some specific transactions, and it was with reference to these alone that the statement was excluded as to all counts excepting count three. We are of the opinion that the statement was admissible against appellant on all counts. While no reference was made to the instances covered by the indictment, and while it was conceded that at the time the statement was taken or made the district attorney had no knowledge of the specific instances here involved, yet the statement contained

admissions going to show a general scheme or plan looking to and having for its purpose the looting of the public funds. The statement contained no confession of any particular act done or crime committed, other than a general malfeasance. On this statement no charge could be predicated or proved. In its essence and to its utmost it was an admission, as the distinction is made in *People* v. *Fowler,* 178 Cal. 657, 664, 666 [174 Pac. 892]. The statement does not come within the principle announced in *People* v. *Canfield,* 173 Cal. 309 [159 Pac. 1046], but rather within the well-accepted rule of *People* v. *Sanders,* 114 Cal. 216 [46 Pac. 153, 157]. In the latter case it is said: "The commonest instance of the admission of evidence of another crime is where it becomes pertinent to prove the scienter or guilty knowledge under the particular charge." And without attempting a treatise upon the subject, it appeals at once to the common sense that where a public official upon investigation admits his wrongdoing and admits that he has, pursuant to plan and scheme, frequently taken out money and mishandled checks belonging to the public funds, such statements throw light upon the intent and knowledge of the accused and illustrate the character of the act under scrutiny.

Coming then to the particular acts going to support the separate counts: Preliminarily we note that all three counts are based upon the mishandling and unlawful appropriation of the funds of a single taxpayer. This taxpayer is named Spalding. In the year 1931, about May thereof, Spalding paid into the assessor's office as and for taxes on unsecured personal property the sum of $90.50. An interesting history surrounds this payment. It appears that the agent of Spalding had been directed by Bender to send in this sum and to make the check payable to McCandless. On the day this check was expected in the office Bender showed noticeable interest and concern. At almost half-hour periods he would inquire of the mail clerk if the letter had come, and otherwise manifest an unusual concern. When the letter did arrive, the deputy in charge, instead of advising Bender or appellant, at once took it and the check in to the assessor, who upon notice thereof sent for Bender and McCandless. Bender told a story about some mistake and stated that the check was intended to pay some taxes on real estate and was sent to him personally for the reason that the

tax had become delinquent in the tax collector's office and that in some way he could take it to that officer and have it acknowledged as having been received earlier, thus avoiding delinquency penalties. The assessor, however, directed a return of the letter and check. All of this took place in the presence of McCandless, who said nothing but glared at the deputy who had apparently upset the plan. It is not possible to infer anything but that McCandless knew that Bender was using his name in the transaction. The taxpayer upon receiving the returned check sent in another one for the same amount, payable to appellant. This check was indorsed by one Priver, using appellant's name, and was regularly cleared. Upon these facts and other details the charge in count one was established to the satisfaction of the jury. The taxpayer, however, had never seen McCandless, and there is not a scintilla of evidence reasonably connecting him with Priver. There is nothing to show, to any degree of satisfaction, that appellant was other than one whose name was used by Bender, without his knowledge, in consummating this steal. We, therefore, have held, and do again hold, that the evidence is insufficient to sustain the conviction on count one.

Coming then to count two: During the year 1930, and on the first Monday in March thereof, Spalding was the owner of considerable personal property, consisting in the main of certain large boats. There was some uncertainty as to whether this property could be secured by certain real estate owned by the same taxpayer, as likewise there was much debate concerning the value of the boats. The transaction in the main was handled through Bender. The boats were first assessed at a large figure and subsequently this amount was reduced almost to a minimum. Without giving the figure, we might state that the reduction showed that either the boats were originally assessed beyond all proportion to their actual value or that the reduction was to a ridiculously low figure. Regardless of this, the amount of tax claimed on the final valuation of the boat "Westward" was $82.75. This amount was paid by check made payable to Bender, for which the taxpayer received no receipt. This check was transferred by Bender to appellant and by the latter deposited in his personal bank account, and thereafter the instrument went through clearance and was paid. An-

other feature of this assessment was that the same boat was carried over into the real estate toll, the tax secured by the real estate, and the entire tax on the latter roll paid. Thus the boat was twice assessed during the same year and the taxes thereon twice paid.

Appellant strenuously attacks the sufficiency of the evidence to sustain this count. He argues that from the peculiar conditions surrounding the valuation it is more probable that the small check was in reality a bribe, rather than a tax payment. The ready answer is that the amount was paid as a tax pursuant to a tax statement. Whether the property was doubly assessed made no difference as far as this payment being public funds is concerned. It is a common occurrence for the taxpayer in every county to pay double taxes, and so often has this occurred that the revenue laws make direct provision for the taxpayer's remedy in such event. Never, however, has it been suggested that, pending adjustment, the money paid is not part of public funds belonging to the county. The chief argument of appellant is that even if all this be conceded, yet the evidence fails to disclose any knowledge on his part. For aught that appears, it is urged, McCandless may have taken this check in regular course as a holder in good faith and for value. There is no positive evidence of any connection between the taxpayer and McCandless, nor is there positive evidence that the latter knew the sum represented in the check was money paid to the county for taxes. When we say positive evidence we mean necessarily evidence disclosing physical contact between Bender and McCandless. No one heard Bender tell appellant that the money was tax money. Yet there is evidence sufficient to satisfy, beyond any reasonable doubt, that the money was tax money, paid in regular course to the county by one owing such a sum for taxes, and that the same never reached the county treasury. There is the proven fact that this money did go to the personal account of appellant and was by him appropriated. There is then the admission of McCandless that he had appropriated sums of money in just this way and that Bender would turn over checks to him the proceeds from which they would divide, and that the funds thus manipulated were moneys received from tax sources and belonging to the county of Los Angeles. We think this evidence suffi-

cient to convince any reasonable person beyond all doubt of the guilt of appellant. ■ The law does not require demonstration or that degree of proof which excluding all possibility of error produces absolute certainty, for such degree of proof is rarely possible. Only that degree of proof is necessary which convinces the mind and directs and satisfies the conscience of those who are bound to act conscientiously upon it.

■ Much is said by appellant concerning the irregularity of the payment to Bender. In this connection it is urged that the tax, being twice paid, was illegal and unusual. All of these arguments are met and answered in the case of *People* v. *Robertson,* 6 Cal. App. 518 [92 Pac. 498], wherein will be found most appropriate language disposing of similar claims.

■ We come now to the third count. The *dramatis personae* are the same, and each in his identical role. The taxpayer is the same, although represented by a different agent. The time of this transaction was earlier than the other two, in that it transpired in the year 1928. The taxpayer had received a tax notice from the assessor's office. At that time McCandless had a book of receipts and had been making tax collections. The mode of operation general in the office was to issue receipt-books to the collectors. When money was received, a receipt would be given the taxpayer and a duplicate receipt would be left in the book. These receipts were numbered, as was each book. When the collector accounted for the book he had all of the duplicate receipts and settled for the amount of total. The taxpayer in this instance paid in the sum of $702 by check. This check went through the hands of McCandless and wound up in his possession. He had a receipt-book showing collection of taxes in the sum of $8,787.73. When he came to make settlement on this book he used the check for $702, though in that book of receipts was no property mentioned as assessed to the taxpayer, Spalding, who had paid the $702. In other words, this check was used to pay out on the receipts for moneys received from other sources. It might be conceded that the office sanctioned the turning in of all checks at as early a date as possible in order to avoid any charge of unreasonable delay in presentation. And it may be conceded further that a practice to this end had

arisen. Appellant concedes that he handled this check and that he turned in the amount represented thereby in settlement of taxes. The testimony before the jury was that this money was received in payment of the taxes of Spalding. No record was found of any assessment against Spalding for the year 1928. Therefore, claims appellant, it is reasonable to assume, and it must be so assumed, that Spalding simply used his check to pay the taxes of someone else, as does often happen. However, the check was made payable to the assessor, E. W. Hopkins, and in response to a tax notice received by Spalding's tax agent. Also, there is evidence that during that year Spalding did own property subject to taxation in the county of Los Angeles; and further was there evidence that the checks of another concern had been similarly used by appellant. We think the showing withstands all argument. The fact that the check of $702 did actually remain in the county funds does not alter the situation, inasmuch as its use to cover up another shortage constituted and completed the offense charged. (*People* v. *Forman,* 67 Cal. App. 697 [228 Pac. 378].)

It may be noted that appellant did not take the stand nor did he offer any explanation of the facts indicating so clearly his guilt. We do strenuously affirm the rule that the failure of a defendant to testify in his own behalf shall in nowise be used against him; yet we must concede that the failure of a defendant to testify does not have the effect of strengthening his case, nor does it tend to weaken the case of the People. When facts are testified to by witnesses for the prosecution concerning which a defendant has personal knowledge, it is his inalienable right to remain mute and offer no explanation. But the one inevitable result is to leave the testimony uncontradicted; and we know of no rule of law that presumes a denial of the facts through silence. Naturally, there remains throughout the trial the presumption of innocence, and the facts are to be viewed in the light of that presumption; but that presumption does not of itself destroy the effect of evidence which is in itself satisfactory.

The record is free from error. The only defense is exceedingly technical and without merit. The guilt of appellant as to counts two and three was clearly shown. Embezzlement of public moneys is one of the most serious offenses known to our law, and one guilty thereof, and whose

guilt so clearly appears as in the instant case, supported by his own admissions, should not find refuge in superficial technicality in nowise affecting the proof of the charge.

As to count one the judgment and order are reversed. As to counts two and three the judgments and orders are affirmed.

Works, P. J., and Stephens, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 21, 1933.