## STATE v. CARLSTROM.

No. 5910.   Decided February 21, 1938.   (76 P. 2d 565.)

*Ray E. Dillman,* of Roosevelt, and *Brockbank & Pope,* of Provo, for appellant.

*Joseph Chez,* Atty. Gen., and *Zelph S. Calder,* Deputy Atty. Gen., for the State.

FOLLAND, Chief Justice.

Defendant L. William Carlstrom served as county clerk for Uintah county from September 1, 1932, to January 7, 1935. He was charged with the crime of unlawfully appropriating to his own use money received by him as such clerk. The information is as follows:

"L. William Carlstrom, having been, on the 29th day of August, A. D. 1935, by C. S. Carter, a committing magistrate, in and for Uintah County, State of Utah, duly bound over and committed to Answer to this charge, is accused by Dallas H. Young, the District Attorney for the Fourth Judicial District of the State of Utah, by this Information of the crime of Felony, to-wit: Unlawful appropriation to his own use of money received by him as clerk of Uintah County, State of Utah, committed as follows:

"That he, the said L. William Carlstrom, on or about the 22nd day of December, A. D. 1934, at Vernal, County of Uintah, State of Utah, was then and there a public officer, to wit: the duly appointed, qualified and acting County Clerk and Ex-Officio County Auditor of Uintah County, State of Utah, and by virtue of his office as County Clerk and Ex-Officio Auditor, was then and there charged with the duty, as said officer, of receiving and collecting fees, for said county; that on or about the 22nd day of December, 1934, the said L. William Carlstrom, while acting in the capacity of Uintah County Clerk and Ex-Officio Auditor, received the sum of sixty and no/100 ($60.00) Dollars from Wilford Whitlock, said money being in payment of Merchant's licenses, to be issued to the said Wilford Whitlock, and it became and was the duty of the said L. William Carlstrom to account for said money to the Treasurer of Uintah County, Utah, on

the first Monday of the month of the month following receipt of the said money, but the said L. William Carlstrom failed and neglected to account to the Treasurer of Uintah County, State of Utah, for the money so received by him, as required by law, and ever since said time has failed and refused to so account; and the said L. William Carlstrom did, then and there, wilfully and unlawfully and without authority of law, appropriate to his own use the said money in the sum of Sixty and no/100 ($60.00) Dollars, received by him as stated aforesaid, contrary to the form of the Statute in such case made and provided and against the peace and dignity of the State of Utah."

From a judgment of conviction defendant appeals and assigns numerous errors, all of which that are argued may be grouped under one head, namely, that the evidence fails to support the charge of an appropriation to his own use. The undisputed evidence shows that on or about December 22, 1934, one W. L. Whitlock gave to appellant as county clerk his check for $60 in payment for a merchant's license for the years 1933 and 1934. This item was never entered on the books of the county clerk or of the county or reported to the county treasurer as required by law. The check was kept by Carlstrom until December 29, 1934, when, after banking hours, it was deposited in the Uintah State Bank to the credit of "County Clerk, L. William Carlstrom." The entry of the deposit was made on the books of the bank on January 2, 1935, the first banking day after December 29th. Carlstrom's term of office expired January 7, 1935. On that day he turned over the office to his successor, Frank L. Noal. The whole fund in the account of "County Clerk, L. William Carlstrom" was checked out as follows: $130 in favor of the Uintah State Bank to pay a check formerly drawn in favor of the Utah State Tax Commission, $2.50 to the State Board of Agriculture, $90.41 to replace a time deposit in the bank, and the balance of $599.93 to the new county clerk, Frank L. Noal.

A detailed report to the county treasurer was made by Carlstrom on January 11th of all fees and charges collected by him on behalf of the county during the month of Decem-

ber, but such report did not include the Whitlock $60 item. At the time Carlstrom received the Whitlock check his books were being audited preparatory to the taking of office by his successor. The account of Whitlock was and had been for some time delinquent. The auditor inquired of Carlstrom more than once whether he had collected the Whitlock fee and each time he denied having collected it. Only later, after the new clerk billed Whitlock for his merchant's license fee, was the misappropriation discovered. Whitlock then came in and showed his cancelled check. A license was then issued to him. The amount of this shortage, together with others, was subsequently paid by Carlstrom's bondsman.

The sections of the statute (R. S. Utah 1933) pertinent to the inquiry are the following:

Section 103-26-59:

"Every officer of this state, or of any county, city, town, precinct or district of this state, and every other person charged with the receipt, safekeeping, transfer or disbursement of public moneys, who either:

"(1) Without authority of law appropriates the same or any portion thereof to his own use, or to the use of another; or * * *

"(9) Willfully omits or refuses to pay over, to any officer or person authorized by law to receive the same, any money received by him under any duty imposed by law so as to pay over the same;—is guilty of a felony."

Section 103-26-60: "Every officer charged with the receipt, safekeeping or disbursement of public moneys who neglects or fails to keep and pay over the same, in the manner prescribed by law, is guilty of a felony."

Section 28-6-2 provides:

"The fees chargeable and collected by the officers of the several counties of this state for the use and benefit of the county shall be paid to the county treasurer on the first Monday in the following month, and must be accompanied by a statement thereof as shown by the fee book, duly verified by the officer making the statement. Such statement shall be fully itemized, showing the persons from whom and on what account, or the causes in which such fees were

collected or earned, and it shall be made in duplicate, one copy of which shall be filed with the county auditor and the other with the county treasurer."

The contention of appellant is that since the record shows that the $60 check of Whitlock's was deposited in the county clerk's account in the Uintah State Bank and presumptively found its way to the Uintah County Treasury through the check given by appellant to his successor that there was no misappropriation to the use of appellant. The fact is that the county clerk's account was short and that the $60 was deposited in that account to make up part of the shortage. Whether the $60 found its way to the treasury we do not know because part of the fund went to the State Tax Commission, part to the Uintah State Bank to replace funds withdrawn from a time deposit, $2.50 to the Board of Agriculture, and the balance to the new county clerk. We assume for the purpose of this case that the entire $60 went into the county treasury through the hands of the new clerk.

Carlstrom received the check in payment of a merchant's license fee which should have been credited on the clerk's books, and reported to the county treasurer as such, and the account thereof remitted to such treasurer for deposit in the county treasury on the "first Monday" in the month following. This was not done. Instead of remitting the $60 to the county treasurer with his report, or giving proper credit on the books, defendant deposited the check in the account which was short in order to pay that much of the debt he owed that account. In this he diverted the money from the account to which it should have been credited and used it for his own purpose. Is that any different from cashing the check at the bank and with the money paying a debt owed by him to his grocer? Suppose Carlstrom had also been a merchant owing for a license fee, and, upon payment of the fee by Whitlock, he remitted it to the county treasurer and had reported it as payment by himself for his own license fee. The mere fact that the money went into the treasury would not exonerate him from the

misappropriation. Under the circumstances, there was only one lawful use to which the $60 could have been put and that was to report it to the county treasurer as payment for Whitlock's license. Instead of that, the check was used to increase appellant's credit at the bank and thereby cover a shortage. We believe, this is a misappropriation of the money to his own use.

There was evidence introduced with respect to misappropriation of other checks and moneys. No error has been assigned as to that. The evidence was introduced as bearing on criminal intent and to show an existing shortage in the defendant's account. *State* v. *Judd*, 74 Utah 398, 279 P. 953. However, we should not be confused by the fact that there had been previous shortages. Defendant was not charged with nor found guilty of any previous misappropriation. We are not here concerned with the question whether or not any of such previous transactions amounted to a breach of law. Defendant was charged with appropriating to his own use the particular $60 paid by Whitlock to him as county clerk. We think the charge was sufficiently proved.

In the case of *State* v. *Judd*, supra, the same sort of a transaction was the basis of the charge. Judd received $391.94 from a tax redemptioner and gave credit on the county books for only $192.94. There was no evidence of where the $200 went or how it was used. It was sufficient to show that it was not credited as it should have been. In that case, however, no error was assigned with respect to this point, but counsel rested their appeal on other questions of law, chiefly the introduction of evidence of other similar transactions. The conviction was sustained. In *State* v. *Olson*, 75 Utah 583, 287 P. 181, this court upheld a conviction bottomed on a somewhat similar transaction. The misappropriation was made by the cashier of a bank in debiting a withdrawal in a savings account where there was no actual withdrawal of money by the depositor. There was proved a larger shortage of which that was a part. The

record was silent as to whether the money was physically withdrawn at the time or remained in the bank to make up part of an existing shortage.

The fact that Carlstrom did not enter the receipt of Whitlock's check on the books, that he denied to the auditor he had received it, and made his deposit in a way that the check would not clear the bank during the current month, all tend to show an intent to put the money to a use of his own and to other than its proper use as a credit for the Whitlock license. The fact, if it be a fact, that the actual money or credit reached the county treasury can make no difference when the money was placed there for the purpose of covering an existing shortage or to pay a debt owing to the county by defendant. Such would be an appropriation to his own use.

Finding no error in the record, the judgment of conviction is affirmed.

HANSON and WOLFE, JJ., and LESTER A. WADE, District Judge, concur.

MOFFAT, Justice (concurring in the result).

I concur in the result arrived at by Chief Justice FOLLAND, upon the ground that Carlstrom received the $60 from Whitlock and did not enter it upon the receipt book and denied that he had received it. I think the case is squarely within the doctrine, and almost identical in the basic facts with the case of *State* v. *Judd*, supra, cited in the opinion of Mr. Chief Justice FOLLAND.

LARSON, J., being disqualified, did not participate herein.