## STATE v. CHRISTIANSEN.

No. 6090.   Decided Oct. 14, 1939.   (94 P. 2d 472.)

Rehearing Denied, March 26, 1940.

*N. J. Bates* and *Vernon Erickson,* both of Richfield, for appellant.

*Joseph Chez,* Atty. Gen., and *Zelph S. Calder,* Asst. Atty. Gen., for the State.

WOLFE, Justice.

Ernest C. Christiansen was charged with the crime of "misusing and embezzling public funds", the information reading as follows:

"That the said Ernest C. Christiansen, on the 16th day of March, A. D. 1934, at Richfield, County of Sevier, State of Utah, was the duly elected, qualified and acting County Treasurer of Sevier County, State of Utah, and then and there, by virtue of his employment as such Treasurer, there came into the care, custody, and control of him, the said Ernest C. Christiansen, certain public monies amounting to $375.-90, which were public monies of said Sevier County, State of Utah, and were monies the said Ernest C. Christiansen was then and there charged with the duty of collecting and receiving as such County Treasurer for and on behalf of said Sevier County, State of Utah, and he, the said Ernest C. Christiansen, after the said payments had come into his possession, care, custody and control as aforesaid, did then and there wilfully, unlawfully and fraudulently convert, embezzle and appropriate the same to his own use, contrary to his trust as such County Treasurer, contrary to the form of the Statute in such cases made and provided and against the peace and dignity of the State of Utah."

From a judgment of conviction defendant Christiansen appeals to this court. Numerous errors have been assigned, but the most important one has to do with the question of whether there was sufficient evidence for the court to submit the case to the jury. It is urged that there is "no evidence that justifies a conviction of the crime alleged or any other crime."

The State's case is based on the following facts: In November, 1933, approximately four months before the alleged embezzlement occurred, the State Land Office wrote to the Treasurer of Sevier County, appellant herein, to find out how much taxes were owing on a certain tract of land in Sevier County, known as the Allen Searle tract. This letter was returned to the Land Office with a note at the bottom signed by appellant to the effect that the County Commissioners had agreed to accept $375.90 in payment for the taxes on said property. The note then reads: "I trust that I may be in receipt of this amount at an early date." Five days later the State Land Office sent a letter addressed to "Ernest C. Christiansen, Sevier County Treasurer," stating, "We are enclosing herewith State Auditor's warrant No. 418696 in the sum of $375.90. * * * We kindly

ask that you receipt the enclosed redemption memorandum and 1933 tax statements and return to this office." The Land Office received no reply to this communication, nor was any redemption receipt forwarded to it. Neither was any money ever credited on the assessment rolls to the payment of the taxes for which the warrant was issued.

On March 16, 1934, the date it is alleged that appellant embezzled $375.90 of public moneys, the state warrant was endorsed with the stamp of appellant as County Treasurer and deposited in the Richfield Commercial & Savings Bank, along with other money, the whole totaling $1,544.66. Immediately prior to that time there had been received in the County Treasurer's Office a total of $1,544.66, exclusive of the state warrant, which sum represented payments for thirty different items of taxes. Receipts had been issued for this amount of money covering the different items of payment. The deposit, therefore, of $1,544.66 (which included the state warrant) corresponded exactly with the amount of receipts issued (which did not include any receipt for the state warrant).

A record of the deposit was made up in the Office of the County Treasurer on the day of the deposit, part of said record being in the handwriting of a deputy in the office and part being in the handwriting of appellant. The part written by the deputy indicates the number of receipts issued and the total amount of each type. $919.71 was received for general redemptions, $594.95 for partial payments, and $30 for general receipts, making a total of $1,544.66. However, as stated above, none of these receipts pertained to the property for which the state warrant was issued, nor were any of them for the state warrant itself. The part of the record which is in the handwriting of the appellant shows the amount which was deposited in the bank and whether it was silver, currency, or checks. It indicates that of the total deposit of $1,544.66, $.73 was in cash, $5 in currency, and $1,538.93 in checks. The deposit slip of the Richfield Commercial & Savings Bank is also made out in the handwriting of

appellant and attached thereto is a piece of adding machine tape containing the items of deposit. Among them is the item of $375.90, represented by the state warrant. The total, however, registered by the adding machine on the slip is only $1,538.93. To that sum was added, in the handwriting of the appellant, the two sums, ".73" and "5.00" to make up a total of $1,544.66.

The deputy whose handwriting appears on the record of deposit in the County Treasurer's Office testified that she made up the amount of all the receipts that had been issued since the last deposit had been made and indicated the total on the deposit record. It was then the custom of appellant to complete the record by indicating the various items of money which had been received for these receipts and deposit that money, the total of which should correspond with the total amount of receipts issued. As heretofore stated, the amount of the deposit did correspond with the amount of the receipts issued, but the deposit included the state warrant, which was not included in the receipts. The deputy further testified that she followed the above procedure in the present instance and made up that part of the record of deposit which contains her handwriting before appellant filled out the other portion.

While appellant did not contradict any of the above evidence, yet he testified that he had no recollection of ever receiving the warrant, or of stamping his endorsement on it or depositing it in the bank.

The problem to be determined by this court is whether the above evidence is sufficient for the court to permit the case to go to the jury to determine the guilt or innocence of appellant herein. We think it is. Our statute, under which appellant is prosecuted, reads as follows (Section 103-26-59, R. S. U. 1933) :

"Every officer of this state, or of any county, city, town, precinct or district of this state, and every other person charged with the receipt, safe-keeping, transfer or disbursement of public moneys, who either:

"(1) Without authority of law appropriates the same or any portion thereof to his own use, or to the use of another * * * is guilty of a felony."

Appellant urges that there was no evidence here to show that he had appropriated any money to his own use, or that he actually ever received or took any of the funds in his office; that it was just as likely that anyone else in the office had taken the funds as that he had. We cannot agree with this contention. The evidence shows that the state warrant was sent to appellant, addressed to him personally; that it remained in the office for several months before it was deposited even though deposits of other moneys received subsequent to the warrant were constantly being made; that when it was finally deposited it was deposited by appellant; that appellant had added the amount of the warrant, together with two small cash items, to the other items of deposit in order to make up a total of $1,544.66 which was necessary to balance the amount of receipts currently issued; and that the taxes for which the warrant was issued were never paid or credited in any way. The warrant was substituted for a like amount of current receipts. These funds which the state warrant replaced in the deposit are unaccounted for. They were not used to pay the taxes for which the warrant had been issued—the evidence for the state clearly shows that. And in order for appellant to successfully maintain that he did not convert those funds to his own use he must account for those funds in such a way as to disprove the state's case. *Busby* v. *State*, 51 Tex. Cr. R. 289, 103 S. W. 638, 645. The court there held:

"We hold the rule to be that, where a public officer is shown to have received money on account of his trust, it is incumbent on him to pay it over to the state in accordance with the obligation assumed by him. In *Evans* v. *State*, 40 Tex. Cr. R. 54, 48 S. W. 194, it was held that, where a party receives money or property to be disposed of in a particular manner, and [it is] further shown that same was not so disposed of, it was then incumbent on such party to show that it was disposed of in some other manner not criminal; that, where exculpatory evidence of an important character is peculiarly within the

knowledge of defendant, it is his duty to produce it. See *Jackson* v. *State*, 44 Tex. Cr. R. 259, 70 S. W. 760, 6 Tex. Ct. Rep. 153."

In *State* v. *Dudenhefer*, 122 La. 288, 47 So. 614, 617, the Supreme Court of Louisiana, after discussing what constitutes an embezzlement, held:

"Despite this contention, we think we are right in holding that the state cannot under the law be held to prove how or in what manner the embezzlement occurred. Such requirement would frequently, we imagine, enable accused to escape punishment. The state is not necessarily concerned whether the defaulter loaned the money, or whatever use he may have made of it. It is sufficient if it appears that he is short in his accounts, or withholds settlement, or fails to pay over the moneys collected."

A very similar case to the one at bar is the case of *Enzor* v. *State*, 27 Ala. App. 60, 167 So. 336, 339, where the court held:

"As in other criminal cases, the burden of proving all the elements of the crime rests on the state, but *where the prosecution has made a prima facie case* of embezzlement as *by proving facts which give rise to a presumption in its favor*, as was done in the present case, it becomes incumbent upon the defendant to offer evidence in denial or explanation of the incriminating circumstances. In this case, the prosecution having offered evidence of the conversion of the warrant for $655.55, it was matter of defense to rebut the fraudulent intent by showing an honest disposition of the proceeds. 20 C. J. 482 (78) A." (Italics added.)

And it has been held that an inference that the accused embezzled property by fraudulently converting it to his own use may be drawn from the fact that he has received money which has not been accounted for. *O'Brien* v. ■ *United States*, 27 App. D. C. 263; *Carter* v. *Dixon*, 162 La. 855, 111 So. 258; *Smith* v. *State*, 61 Okl. Cr. 427, 69 P. 2d 394. See *People* v. *Wardwell*, 77 Cal. App. 44, 246 P. 97. In *Carter* v. *Dixon*, supra, the court held [162 La. 855, 111 So. 259]:

"We think that the facts alleged suffice for a court to infer therefrom that Dixon embezzled the property and money of the corporation

to the extent of said shortage; for the inference that a person has embezzled property or money by unlawfully converting it to his own use may well be drawn from the fact that he has not paid the price in due course to the owner, or that he has not accounted for the money which he has received. *O'Brien* v. *United States,* 27 App. D. C. 263."

We think the facts are sufficient in this case from which the jury could conclude beyond a reasonable doubt that appellant was guilty of appropriating the sum of $375.90 to his own use. If the appellant wished to overcome this prima facie case he should have introduced evidence to show that the money was actually accounted for in such a way as not to constitute an "appropriation" to his own use. The evidence for defendant is to the effect that he often issued receipts on "hold" checks or postdated checks, and that when he did so it was necessary, in order to make the deposits for the day balance with the receipts, to make up the shortage caused by the "hold" checks with other money; that when these checks were finally good they were deposited. That the Treasurer should give receipts for taxes paid on "hold" checks seems itself a questionable practice. The deputy testified that it was not the practice of the office to do so, and that she knew of no instance when it had been done. Be that as it may, the evidence above does not rebut the state's case. If "hold" checks were taken in on the day the state warrant was deposited, thereby explaining the reason for depositing the state warrant without crediting it as it should have been, yet the fact that the taxes for which the warrant was issued were never credited with any payment indicates that the money or "hold" checks replaced in the deposit by the state warrant were never accounted for. See *People* v. *Bender,* 132 Cal. App. 753, 23 P. 2d 439; *State* v. *Carlstrom,* 94 Utah 159, 76 P. 2d 565.

Appellant has assigned other errors involving the admissibility of certain evidence, refusal of the court to give certain instructions, error of the court in giving certain instructions, misconduct of the prosecuting attorney in cross-

examining appellant, and misconduct of the prosecuting attorney in making certain statements to the jury.

It is urged that the court erred in admitting evidence of other shortages on the books of the County Treasurer, together with a written summary made by a public accountant, who was a witness, showing those shortages. There was no error in this. It is generally held that where records or books of account are complicated and voluminous and it is impracticable to examine them in court a qualified person who has examined them may testify as to the results of his investigation. *State* v. *Olson,* 75 Utah 583, 287 P. 181. And where a written summary or schedule has been made up by an expert who has examined the books, the trial court may, in its discretion, allow such summary or schedule to be introduced in evidence where properly identified and verified by the party who made it up. *People* v. *Sawhill,* 299 Ill. 393, 132 N. E. 477; *Jones* v. *State,* 45 Okl. Cr. 246, 282 P. 892; *State* v. *O'Neil,* 24 Idaho 582, 135 P. 60; Wigmore on Evidence, 2d Ed., Vol. 2, p. 827, Section 1230.

This court has previously held that evidence of a general shortage or of other similar shortages is admissible to show criminal intent. *State* v. *Olson,* supra; *State* v. *Judd,* 74 Utah 398, 279 P. 953. See also *People* v. *Wardwell,* supra; *State* v. *Wilcox,* Mo. Sup., 179 S. W. 479. We have already determined that the evidence was sufficient to show that appellant appropriated the money to his own use. The evidence of other shortages was, therefore, admissible as to his intent. His intent may also be inferred from the circumstances of the conversion. *Gurley* v. *State,* 157 Ark. 413, 248 S. W. 902.

Appellant next contends that the court erred in its instructions to the jury because it used the phrase "misusing public moneys" whereas the crime charged was the wrongful appropriation of moneys to the use of accused. It is true that the word "misuse" is a more general term than the phrase "appropriation to his own use",

but the court's instructions were such that the jury could not have been misled by the use of the general term. The court throughout its instructions stated specifically that what the appellant was charged with was the appropriation to his own use of public moneys. In instruction No. 10 the court stated:

"If it should appear, beyond a reasonable doubt, that certain money came into the possession of defendant on the 16th day of March, 1934, and that said money was received by the defendant for the payment of certain taxes, and that such money was not credited in the records of the county treasurer's office, to the account for which they were paid, still *you would not be justified in finding a verdict of guilty from these circumstances alone, unless it shall further appear, beyond a reasonable doubt, that the defendant appropriated the money so received to his own use.*" (Italics added.)

Too, the phrase "misusing and embezzling public funds" appears in the information under which appellant was tried. No objection was made to its use there. Therefore, when the court, in its final instruction to the jury, stated "your verdict in this case must be guilty of *misusing public funds as charged in the information*" (italics added), the jury were adequately apprised of what the court meant.

As to the alleged misconduct of the prosecuting attorney, both in cross-examination and in his argument to the jury, we have carefully examined the record and find nothing there which could have resulted in prejudice to appellant.

The judgment of the trial court is affirmed.

MOFFAT, C. J., and LARSON, McDONOUGH, and PRATT, JJ., concur.